1 Stuart W. Price (SBN 125918)
2 swprice@bryancave.com
  Aileen M. Hunter (SBN 253162)
3 aileen.hunter@bryancave.com
  Katherine M. Harrison (SBN 285561)
4 Katherine.harrison@bryancave.com
  **BRYAN CAVE LLP**
5 3161 Michelson Drive, Suite 1500
  Irvine, California 92612-4414
6 Telephone: (949) 223-7000
7 Facsimile: (949) 223-7100

8 Attorneys for Defendants
  COUNTRYWIDE FINANCIAL CORPORATION (erroneously sued as
9 "Countrywide Financial Corporation, (n.k.a. Bank of America Home Loans)");
  COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA
10 CORPORATION; BANK OF AMERICA, N.A.

11

12             **IN THE UNITED STATES DISTRICT COURT**

13       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

14

15 ANTHONY MARINO, on behalf of        Case No. SACV14-00046 JLS (ANx)
   himself and all others similarly situated,
16                                      **MEMORANDUM OF POINTS AND**
17        Plaintiff,                    **AUTHORITIES IN SUPPORT OF**
                                        **MOTION TO DISMISS FIRST**
18     v.                               **AMENDED COMPLAINT**
                                        **PURSUANT TO FEDERAL RULES**
19                                      **9(b), 12(b)(1), AND 12(b)(6)**
20 COUNTRYWIDE FINANCIAL
   CORPORATION, (n.k.a. Bank of        Hon. Josephine L. Staton
21 America Home Loans);
   COUNTRYWIDE HOME LOANS,             Date:       March 14, 2014
22 INC.; BANK OF AMERICA CORP.,        Time:       2:30 p.m.
   BANK OF AMERICA N.A., and DOES      Courtroom:  10A
23 1-100, inclusive,
24
25        Defendants.
26
27
28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

                                  1

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   THE ALLEGATIONS ............................................................................... 2

    A.    The Supposed "Doomsday Strategy" ........................................... 2

    B.    Marino's Loans .............................................................................. 4

    C.    The Claims for Relief ..................................................................... 5

III.  PLAINTIFF LACKS ARTICLE III STANDING AND STANDING TO
    SEEK DECLARATORY OR INJUNCTIVE RELIEF ............................... 6

IV.   THE CLAIMS ARE TIME-BARRED ...................................................... 7

V.    THE FIRST AMENDED COMPLAINT FAILS TO STATE  A
    FRAUDULENT CONCEALMENT CLAIM ........................................... 10

    A.    The Elements of Fraudulent Concealment ................................... 10

    B.    Marino Fails To Allege Causation ............................................... 10

        1.    The Allegations ................................................................ 11

        2.    Marino Alleges No "But For" Causation ......................... 12

    C.    Marino Fails to Allege A Material Omission Or Reliance ........... 13

    D.    Marino Fails To Allege A Duty To Disclose ............................... 15

VI.   THE FIRST AMENDED COMPLAINT FAILS TO STATE A  UCL
    CLAIM ..................................................................................................... 18

    A.    Marino Does Not Allege Standing/Causation/Injury-in-Fact ..... 18

    B.    Marino Does Not Allege A UCL Predicate ................................. 19

        1.    Marino Does Not Allege Fraudulent Conduct ................. 19

        2.    Marino Does Not Allege Unlawful Conduct .................... 19

        3.    Marino Does Not Allege Unfair Conduct ........................ 20

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

VII.   THE COMPLAINT FAILS UNDER RULES 9(B) AND 12(B)(6) ...............20

VIII.  THE COMPLAINT FAILS TO SATE A CLAIM AGAINST BANK OF
       AMERICA CORPORATION, OR BANK OF AMERICA, N.A. .................22

IX.    CONCLUSION ................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   842 F.Supp.2d 1216 (C.D. Cal. 2012) ................................................. 23

*Animal Legal Defense Fund v. Mendes*,
   160 Cal.App.4th 136 (2008) ................................................................ 18

*Apodaca v. Whirlpool Corp.*,
   2013 WL 6477821 (C.D. Cal. 2013) .................................................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................... 19, 21

*Bank of America Corp. v. Sup. Ct.*,
   198 Cal.App.4th 862 (2011) ........................................................ passim

*Bank of New York Mellon v. City of Richmond*,
   2013 WL 5955699 (N.D.Cal. 2013) ...................................................... 6

*Bayview Hunters Point Cmty. Adv. v. Metro. Transp. Comm*,
   366 F.3d 692 (9th Cir. 2004) ............................................................... 14

*Beaver v. Tarsadia Hotels*
   2013 WL 5671163 (S.D.Cal. 2013) ...................................................... 9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 20, 21

*Bennett v. Suncloud*,
   56 Cal.App.4th 91 (1997) ................................................................... 22

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal.App.4th 1544 (2007) .............................................................. 19

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,
   162 Cal.App.4th 858 (2008) ........................................................ 10, 15

*Bower v. AT & T Mobility, LLC*,
   196 Cal.App.4th 1545 (2011) .............................................................. 13

*Cadlerock Joint Venture, L.P. v. Lobel*,
   206 Cal.App.4th 1531 (2012) ............................................................... 7

*Casault v. Federal Nat. Mortg. Ass'n*,
   915 F.Supp.2d 1113 (C.D.Cal. 2012) ................................................. 19

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

IR01DOCS\686190.3

iii

*Christensen v. Superior Court*,
   54 Cal.3d 868 (1991) ................................................................................ 18

*Clerk v. Telesis Community Credit Union*,
   2013 WL 3071250 (C.D.Cal. 2013) ......................................................... 6

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011) ................................................................ 21

*Daro v. Superior Court*,
   151 Cal.App.4th 1079 (2007) ......................................................... 12, 18

*Das v. WMC Mortg. Corp.*,
   831 F.Supp.2d 1147 (E.D.Cal. 2011) .................................................... 15

*Davies v. Krasna*,
   14 Cal.3d 502 (1975) ................................................................................ 8

*Deteresa v. ABC*,
   121 F.3d 460 (9th Cir. 1997) ................................................................. 16

*Fox v. Ethicon Endo-Surgery Inc.*,
   35 Cal. 4th 797 (2005) ............................................................................. 8

*Garton Title Ins. Trust Co.*,
   106 Cal.App.3d 365 (1980) ................................................................... 11

*Gen. Bedding Corp. v. Echevarria*,
   947 F.2d 1395 (9th Cir.1991) .................................................................. 8

*Goehring v. Chapman University*,
   121 Cal.App.4th 353 (2004) ................................................................. 11

*Goodman v. Kennedy*,
   18 Cal.3d 335 (1976) ............................................................................. 10

*Groth-Hill Land Co., LLC v. Gen. Motors LLC*,
   2013 WL 3853160 (N.D. Cal. July 23, 2013) ..................................... 16

*Hall v. Time, Inc*,
   158 Cal.App.4th 847 (2008) ................................................................. 18

*Hatch v. Collins*,
   225 Cal.App.3d 1104 (1990) ................................................................... 8

*Helm v. K.O.G. Alarm Co.*,
   4 Cal.App.4th 194 (1992) ...................................................................... 11

*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Lit.*,
   No. 2:11–ML–02265–MRP (MANx), 2013 WL 1881567 (C.D. Cal. May
   6, 2013) .................................................................................................... 23

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) ........................................................................... 18

*Jatras v. Bank of America Corp.*,
   2010 U.S. Dist. LEXIS 40074 (D.N.J. Apr. 22, 2010)............................ 13

*Jenkins v. JPMorgan Chase*,
   216 Cal.App.4th 497 (2013) .................................................................. 18

*Jensen v. Quality Loan Serv. Corp.*,
   702 F.Supp.2d 1183 (E.D. Cal. 2010) ................................................... 18

*Kaldenbach v. Mutual of Omaha Life Ins.*,
   178 Cal.App.4th 830 (2009) .................................................................. 10

*Kearns v. Ford Motor Co.*,
   567 F.3d  1120 (9th Cir. 2009) .............................................................. 21

*Khoury v. Maly's of Cal., Inc.*,
   14 Cal.App.4th 612 (1993) .................................................................... 21

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) ........................................................................... 19

*Lawrence v. Sadek*,
   2013 WL 5771158 (C.D.Cal. 2013) ...................................................... 14

*Leslie G. v. Perry & Assoc.*,
   43 Cal.App.4th 472 (1996) .................................................................... 11

*LiMandri v. Judkins*,
   52 Cal.App.4th 326 (1997) .............................................................. 15, 16

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal.App. 4th 115 (2007) ................................................................. 10

*McGee v. First Federal Sav. & Loan Ass'n*,
   761 F.2d 647 (11th Cir. 1985) ............................................................... 14

*Minnesota Life Ins. Co. v. Countrywide Fin. Corp.*,
   No. 12-CV-06149-MRP (MANx), 2012 WL 6742119 (C.D. Cal. Dec. 6, 2012) ...................................................................................................... 23

*Mirkin v. Wasserman*
   5 Cal. 4th 1082 (1993) .......................................................................... 17

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir.1989) ................................................................. 21

*Neu-Vision Sports, Inc. v. Soren/McAdam/Bartells*,
   86 Cal.App.4th 303 (2000) .................................................................... 14

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Norgart v. Upjohn Co.*,
21 Cal.4th 383 (1994) ............................................................................. 9

*Nymark v. Heart Fed. Savings & Loan Ass'n*,
231 Cal.App.3d 1089 (1991) .................................................................. 14

*Patrick v. Alacer Corp*.,
167 Cal.App.4th 995 (2008) .................................................................. 11

*Perlas v. GMAC Mortg., LLC*
187 Cal.App.4th 429 (2010) .................................................................. 14

*Peterson v. Cellco Partnership*,
164 Cal.App.4th 1583 (2008) ................................................................ 18

*Pinel v. Aurora Loan Services, LLC*,
814 F.Supp.2d 930 (N.D.Cal.2011) ...................................................... 19

*PPG Indus., Inc. v. Transamerica Ins. Co.*,
20 Cal. 4th 310 (1999) .......................................................................... 11

*Principal Life Ins. Co. v. Robinson*,
394 F.3d 665 (9th Cir. 2005) .................................................................. 6

*Renteria v. U.S.*,
452 F.Supp.2d 910 (D. Ariz. 2006) ...................................................... 14

*Richard P. v. Vista Del Mar Child Care Serv*.
106 Cal.App.3d 860 (1980) .................................................................. 14

*Salameh v. Tarsadia Hotels*,
2011 WL 1044129 (S.D.Cal. 2011),
*aff'd*, 726 F.3d 1124 (9th Cir. 2013) .................................................... 14

*Scripps Clinic v. Superior Court*,
108 Cal.App.4th 917 (2003) ............................................................ 19, 20

*Serv. by Medallion, Inc. v. Clorox Co.*,
44 Cal.App.4th 1807 (1996) .................................................................. 10

*Soberanis v. Mortgage Electronic Registration Systems, Inc.*
2013 WL 4046458 (S.D.Cal 2013) ........................................................ 6

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir.2007) .................................................................. 21

*Tait v. BSH Home Appliances Corp*.,
2011 WL 1832941 (C.D.Cal. 2011) ...................................................... 21

*Texas v. United States*,
523 U.S. 296 (1998) ............................................................................... 7

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Thomas v. Anchorage Equal Rights Comm'n,*
220 F.3d 1134 (9th Cir.1999) ........................................................ 6

*Thomas v. Union Carbide Agric. Prods. Co.,*
473 U.S. 568 (1985) ....................................................................... 7

*Verizon Cal. Inc. v. Peevey,*
413 F.3d 1069 (9th Cir.2005) ........................................................ 6

*Vess v. Ceigy Corp.,*
317 F.3d 1097 (9th Cir. 2003); ................................................... 21

*Viner v. Sweet,*
30 Cal.4th 1232 (2003) ................................................................ 11

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
592 F.3d 954 (9th Cir. 2009) ........................................................ 8

**Statutes**

28 U.S.C. § 2201(a) ............................................................................... 6

Cal. Bus. & Prof. Code § 17204 ......................................................... 18

Cal. Bus. & Prof. Code § 17208 ........................................................... 8

Cal. Civ. Proc. Code § 338(d) ............................................................... 7

Cal. Civ. Proc. Code § 580a .................................................................. 6

Cal. Civ. Proc. Code § 580d ............................................................... 20

Cal. Civ. Proc. Code § 726a ........................................................... 6, 7

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

IR01DOCS\686190.3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## I.   **INTRODUCTION**

In 2004, Anthony Marino borrowed $468,000 to buy property.  Two years later, he refinanced, borrowing about the same amount – $479,000 – from Countrywide Home Loans, Inc.  At that time, he also obtained a "second mortgage cash-out" loan of $169,000.  An appraiser assessed the property's fair market value as $720,000.

In 2008, Marino defaulted on his second mortgage (but not the primary mortgage).  Fearing foreclosure, he brought this class action against Bank of America Corporation, and three other defendants.

Marino contends that Countrywide defrauded him as part of a scheme to increase market share to meet the "rising demand on Wall Street for 'private label' securitizations of non-conforming loans" (First Amended Complaint ("FAC") p.19:3-5.)  He says Countrywide's lax underwriting standards increased the risk of a deficiency judgment in the event of default.  He claims Countrywide had a duty to disclose its underwriting standards.  He asks this Court to hold Defendants liable for any future deficiency judgment entered against him and putative class members.

Marino's theory that a lender is liable for a market value decrease that occurred after he agreed to purchase the property for $585,000, after he obtained a loan for $468,000, after he applied for and agreed to a new loan in effectively the same amount, and after he received $169,000 in cash ignores the purpose of underwriting standards (to protect the lender) and fails to offer factual allegations showing that Countrywide's underwriting standards could or did cause property values to decline.  This theory would render every lender into a guarantor of future property values.  That is not the law.

Marino brought suit on November 25, 2013, alleging fraud-based claims for declaratory/injunctive relief and violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  A week later, Marino filed an

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

effectively identical and equally defective First Amended Complaint.

This Court should grant dismiss the First Amended Complaint with prejudice for several independent reasons:

- **Article III/Ripeness.**  Marino's claims are not ripe.  Defendants have not pursued foreclosure or a deficiency judgment.

- **Statute of Limitations.**  Marino's claims, presented more than seven years after the alleged misconduct, are time-barred.

- **No Essential Elements of a Fraud or UCL Claim.**  The First Amended Complaint fails to allege, with or without particularity, causation/injury-in-fact/standing or an actionable violation of the UCL.

- **Uncertainty.**  The First Amended Complaint is defectively pled in violation of Fed. R. Civ. P. 8, 9(b), and 12.

- **No Showing Of Liability On The Part of BAC or BANA.**  The First Amended Complaint fails to allege facts supporting any liability on the part of BANA or BAC for the conduct alleged.

## II.   THE ALLEGATIONS

### A.   The Supposed "Doomsday Strategy"

The First Amended Complaint lifts most of its allegations from a complaint filed by other attorneys in an unrelated action against Countrywide Financial Corporation asserting violations of federal securities laws. *See Children's Hospital & Medical Center Foundation of Omaha v. Countrywide Financial Corp*., CV11 02056 SJO (C.D. Cal. 2011).

Despite its protracted length, the First Amended Complaint offers only blurred, conclusory assertions lacking in factual specifics.  Its text lumps Defendants Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Full Spectrum Lending, Inc., and Bank of America Corporation together as "Countrywide," with no effort to distinguish which Defendant did what,

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

1    when, to whom, or how they did it.

2          The "overview" and "summary" of facts, which consume 74 pages of the

3    pleading, say nothing about Marino, arguing instead that Defendants and a host of

4    government and private enterprises were all players in "a new aggressive growth

5    strategy calling for Countrywide to double its share of the national residential loan

6    market largely through the origination of non-conforming adjustable rate loans

7    (ARMs)."  (FAC p.19:4-13.)   The new "strategy" started in 2003 with the "rising

8    demand on Wall Street for 'private label' securitizations of non-conforming loans."

9    (FAC p.19:3-5.)  By 2006, 45.2% of Countrywide's loans were non-conforming

10   loans.  (FAC p.22:5.)

11         "To achieve this level of growth and these kinds of profit[s] nationwide and in

12   California, Countrywide had to change its lending practices." (FAC p.22:18-19.)

13   Countrywide allegedly implemented four "major changes": (1) using ARMs instead

14   of fixed-rate loans; (2) lending money based on stated income; (3) approving more

15   income-deficient loans; and (4) marketing itself as trustworthy.  (FAC p.25:24-

16   26:13.)  As a result, Countrywide achieved the desired market growth through

17   nonconforming loans with a higher risk of default.  (FAC pp. 22:3-17, 22:21-24.)

18   "Countrywide's highest level executives also knew that the housing boom was

19   temporary and when it ended, as they believed it inevitably would, Countrywide

20   would be unable to refinance these troubled loans, and as a consequence, a high

21   percentage of these income deficient borrowers would have no alternative at reset

22   other than to default." (FAC p.27:4-8.)  These executives "could reasonably foresee

23   that large scale defaults and foreclosures would inevitably occur when the housing

24   boom ended, and that these defaults and foreclosures would significantly change the

25   supply-demand conditions of those regional marketplaces in which the foreclosure

26   occurred, substantially contributing to the decline of home prices."  (FAC p.27:9-

27   13.)   Countrywide "actively conceal[ed] its knowledge of the reasonably

28

foreseeable effects its unsound lending practices would have on California home values when the housing boom ended." (FAC p.28:6-7.)

Marino then devotes less than four pages of his 88-page complaint to conclusory allegations about his interactions with Defendants. (FAC p. 8:25-11:27).

**B.**   **Marino's Loans**

Marino bought his property in 2004 for $585,000. (FAC p.8:20-21.)  He borrowed $468,000 of the purchase price from a third party. (FAC p.8:21-23.)

In 2006, he applied to Countrywide Home Loans ("Countrywide") to (1) refinance his original loan by borrowing $479,000 evidenced by a note "secured by a first deed of trust on the Marino property;" and (2) borrow $169,000 in cash through a "second mortgage cash-out" loan evidenced by a note "secured by a second deed of trust on the Marino property." (FAC p.8:26-9:22.)

Marino claims he relied on Countrywide's "loan processing assessments" "in lieu of conducting [his] own independent investigation . . . to determine the appropriate margin of residual equity needed to protect against the risk of second mortgage default in the context of declining home values." (FAC p.29:7-16.)  He admits, however, that the "loan processing assessments" were for Countrywide's benefit. (FAC pp.9:12-17; 72:24-74:4)

The "housing boom ended in California in late 2007." (FAC p.75:15). Although Marino "assumed the inherent risk that home prices could decline over time below his aggregate principal loan balance, subjecting him to a possible deficiency judgment in the event of default, [he] did not and would not assume an increased risk of home prices declining below his aggregate principal loan balance caused by Countrywide's undisclosed unsound business, lending and loan origination practices." (FAC p.11:11-15.)

Although Marino is current on his first loan payments, he has not made payments on the second mortgage since October 2008. (FAC p.10:15-18, 11:19.)

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

He has received letters and telephone calls "threatening action against Plaintiff unless he cures his default," but he continues to own the property.  (FAC pp.10:18-20, 11:18.)

## C.   The Claims for Relief

Marino asserts claims for declaratory/injunctive relief based on fraudulent concealment and violations of Cal. Bus. & Prof. Code §§ 17200 *et seq*. (the "UCL") (FAC pp.82:23-86:25), on behalf of a class of borrowers who:

> (i) currently own a 1-4 unit residential property located in California…; (ii) obtained a cash-out refinance loan from Countrywide during the time period of July 1, 2005 thru July 17, 2008…, (iii) the cash-out refinance loan was evidenced by a note in favor of Countrywide …; (iv) the aggregate principal loan balance owed at loan origination was equal to or greater than 75% of the appraised value assigned by Countrywide to the Property; (v) the Note was secured by a second deed of trust on the Property…; (vi) the Note has not been satisfied in full, and (vii) the Deed of Trust currently encumbers the Property.

(FAC p.14:15-19.)

He seeks a declaration that if he or a putative class member defaults, Defendants are "liable for any and all deficiencies."  (FAC p.2:2-4.)  He also seeks restitution and an injunction preventing Defendants "from seeking a second mortgage deficiency judgment against Plaintiff or any member of the Class on the second mortgage debt" or requiring Defendants "to defend, pay on behalf of, indemnify, and hold Plaintiff and the Class harmless against any and all claims, demands, suits or loss" brought by any transferee or assignee of the second mortgage debt (FAC p.2:5-11.)

Marino does not allege, however, that any Defendant has initiated foreclosure on his second mortgage or that any Defendant has sought or at this time could seek a deficiency judgment against him or any member of the putative class.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

III.   **PLAINTIFF LACKS ARTICLE III STANDING AND STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF**

"Article III of the Constitution requires that there exist a 'case or controversy' and that the issues presented must be 'definite and concrete, not hypothetical or abstract' for them to become ripe for determination." *Bank of New York Mellon v. City of Richmond*, 2013 WL 5955699, * 2 (N.D.Cal. 2013), *quoting Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir.1999) (citations omitted).  The ripeness requirement is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas*, 220 F.3d at 1139 (citations omitted).

To state a claim for declaratory relief, there must be an actual controversy. *See* 28 U.S.C. § 2201(a).  "The requirement that a case or controversy exist under the Declaratory Judgment Act is 'identical to Article III's constitutional case or controversy requirement.' [Citations.] If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669-670 (9th Cir.  2005).

Ripeness may be presented by a Rule 12(b)(1) motion.  This Court lacks subject matter jurisdiction because Marino's claims are not ripe for resolution. *Verizon Cal. Inc. v. Peevey,* 413 F.3d 1069, 1084 (9th Cir.2005).  A lack of controversy justifying declaratory relief may be asserted under Rule 12(b)(6).  *See e.g., Clerk v. Telesis Community Credit Union*, 2013 WL 3071250, *5 (C.D.Cal. 2013);  *Soberanis v. Mortgage Electronic Registration Systems, Inc.* 2013 WL 4046458, *4-5 (S.D.Cal 2013).

The First Amended Complaint seeks relief based solely on hypotheticals.  In California, a lender must exhaust the security (*i.e.*, foreclose) before suing on the note (*i.e.*, seeking a deficiency judgment).  Cal. Civ. Proc. Code §§ 580a, 726a.  A junior lender cannot sue on its note without foreclosing unless the senior lender has

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

already foreclosed.  *Cadlerock Joint Venture, L.P. v. Lobel*, 206 Cal.App.4th 1531, 1543 (2012).  Because Marino is not in default on the senior loan, Bank of America could only seek a deficiency judgment on the second mortgage after a foreclosure proceeding – and then, only if Bank of America pursued and prevailed in a judicial foreclosure.  Cal. Civ. Proc. Code §§ 726a, 726.

Marino wants the Court to declare he is not liable for a deficiency judgment that has not been sought or entered, and to enjoin Defendants from seeking a deficiency judgment that none of them has sought.  He seeks relief "in the event" that he or other putative class members default, the lender sues for judicial foreclosure and prevails, and the lender then seeks a deficiency judgment.  (FAC p.84:12-26).  But "a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States,* 523 U.S. 296, 300 (1998), *quoting Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81 (1985).

Marino is current on the first loan and does not contend that the lender is foreclosing on that note.  (FAC p.11:19.)  In order to seek a deficiency judgment, Defendants must sue Marino for judicial foreclosure, succeed in that action by obtaining a decree of sale, foreclose, and then pursue him for any deficiency following the sale.  Marino does not allege that any of these things have occurred.  There is no definite and concrete controversy to support his declaratory relief claim.

## IV.   THE CLAIMS ARE TIME-BARRED

The First Amended Complaint alleges fraudulent acts and UCL violations said to occur before Marino signed the Countrywide loan documents in April 2006.  (FAC p. 9:18-10:14).  Marino brought this suit more than seven years later, in November 2013.

A three-year statute of limitations governs fraud claims, including declaratory relief claims based in fraud.  Cal. Civ. Proc. Code § 338(d); *see Hatch v. Collins*,

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

225 Cal.App.3d 1104, 1110 (1990) (Section 338(d) applies to an action based in fraud seeking equitable relief).  A four-year statute of limitations governs UCL claims.  Cal. Bus. & Prof. Code § 17208.

"Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements."  *Fox v. Ethicon Endo-Surgery Inc.*, 35 Cal. 4th 797, 806-07 (2005) (quotation and citation omitted); *see Davies v. Krasna,* 14 Cal.3d 502, 514 (1975).

When a claim is time-barred, the court should dismiss it.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 957, 969 (9th Cir. 2009) (affirming the district court's dismissal of a time-barred claim on a Rule 12(b)(6) motion to dismiss).

To invoke the delayed discovery rule, "the plaintiff must plead and prove [ ] facts showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake." *Gen. Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 (9th Cir.1991).  "[W]hen the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run.  Thus, plaintiff has discovered its claim . . . and the statute of limitations begins to run, when it has actual *or constructive* notice of its claims." *Id.* (emphasis original; citation omitted).

Marino alleges that, in April 2013, he "received a letter from Defendant Bank of America, N.A. advising Plaintiff that Bank of America, N.A. intends to initiate a foreclosure action on the Marino property and the foreclosure will be conducted in the name of a third party trust."  (FAC p.10:21-23.)  As "a result of this letter, on or about April 29, 2013, Plaintiff contacted his attorney, George Spizzirri, to seek legal

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

advice….”  (FAC p.10:24-25.)  In November 2013, Marino’s attorney provided him with a draft complaint that “resulted in Plaintiff[‘s] discovery of the wrongdoing of Countrywide as alleged herein.”  (FAC p. 11:2-3.)

Marino’s only alleged basis for delayed discovery – that an attorney did not advise him until November 2013 – is insufficient as a matter of law.  “It is irrelevant that the plaintiff is ignorant of ... the legal theories underlying his cause of action,” or that “an attorney has not yet advised him.”  *Beaver v. Tarsadia Hotels* 2013 WL 5671163, * 20 (S.D.Cal. 2013), *quoting Norgart v. Upjohn Co.,* 21 Cal.4th 383, 398 n.2 (1994).

Marino does not otherwise allege why he was unable to discover the “facts” before November 2013.  The First Amended Complaint says nothing about why Marino could not have consulted the “public” information he identifies as available as early as 2007, including NBC news reports and *Wall Street Journal* articles. (FAC p.19:10-15 (2003 growth strategy announced); p.22:26-23:2 (2007 *Wall Street Journal* and *Standard & Poor’s* reports on Countrywide); pp.61:5-8, 76:16-17 (*Wall Street Journal* “publicly disclosed” Countrywide had “become dependent upon quasi-governmental aid to stay afloat. . .”); p.41:3-9 (NBC news report); p.24:3-25:21 (lawsuits from 2009 to 2012).)

Marino admits there was ample publicity about a decline in residential property values as early as 2007.  (FAC p.75:15.)  He also admits the public knew about Countrywide’s supposedly lax underwriting standards as early as 2007: “Countrywide revealed to the market that ‘delinquencies and defaults continue to rise.’”  (FAC p.75:17-18; *see also* FAC p.76:3-4 (in 2007, the “market” learned more about Countrywide’s lending practices).)

Equally important, Marino concedes he has not made payments on his second mortgage since October 2008 (FAC p.10:15-18, 11:19), which alone was sufficient notice or information of circumstances to put a reasonable person on inquiry.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Based on these admissions, Marino had constructive knowledge.  He cannot invoke the delayed discovery rule.  The claims are time-barred.

## V.   THE FIRST AMENDED COMPLAINT FAILS TO STATE A FRAUDULENT CONCEALMENT CLAIM

### A.   The Elements of Fraudulent Concealment

Marino's declaratory relief claim is based on fraudulent concealment. "[C]oncealment is a species of fraud, and fraud must be pleaded with specificity." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.App.4th 858, 878 (2008) (quotation and citation omitted).  To state his first cause of action, Marino must plead, "with specificity":  (1) concealment of a material fact; (2) a duty to disclose that fact; (3) the intent to defraud plaintiff; (4) that plaintiff was not aware of the fact and would not have acted as he did if he had known that fact; and (5) causation of damages.  *See Bank of America Corp. v. Superior Court*, 198 Cal.App.4th 862, 870-71 (2011); *Kaldenbach v. Mutual of Omaha Life Ins*., 178 Cal.App.4th 830, 850 (2009).  "Mere conclusionary allegations that the omissions were intentional and for the purpose of defrauding and deceiving plaintiffs and bringing about the purchase and that plaintiffs relied on the omissions in making such purchase are insufficient to show fraud by concealment."  *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 132 (2007), *quoting Goodman v. Kennedy*, 18 Cal.3d 335, 347 (1976).

### B.   Marino Fails To Allege Causation

"[T]he plaintiff must plead and prove the 'detriment proximately caused' by the defendant's tortious conduct….  Deception without resulting loss is not actionable fraud."  *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal.App.4th 1807, 1818 (1996).  "[A] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to determine the issue in favor of

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

the defendant *as a matter of law*." *Leslie G. v. Perry & Assoc.*, 43 Cal.App.4th 472, 484 (1996) (citation omitted; emphasis added).

Proximate cause requires proof, at minimum, of cause-in-fact.  *E.g., Helm v. K.O.G. Alarm Co.*, 4 Cal.App.4th 194, 204 (1992); *Garton Title Ins. Trust Co.*, 106 Cal.App.3d 365, 382 (1980).  Cause-in-fact, in turn, requires a showing of "but for" causation: "An act is a cause in fact if it is a necessary antecedent of an event." *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 315 (1999); *see Viner v. Sweet*, 30 Cal.4th 1232 (2003).

"At the pleading stage, the complaint must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated. … [N]o liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes." *Patrick v. Alacer Corp.*, 167 Cal.App.4th 995, 1017 (2008), citing *Goehring v. Chapman University*, 121 Cal.App.4th 353, 365 (2004).

## 1.    The Allegations

The First Amended Complaint contains only conclusory statements about causation.  Marino admits the housing "boom" ended in 2007.  (FAC p.75:15.)  He contends Countrywide knew that once the home prices leveled or declined, more borrowers would default, and that this would lead to more foreclosures.  (FAC p.10:2-5.)  Marino does not allege that Countrywide's conduct caused a further decline in the market; he alleges only that Countrywide could reasonably foresee a further decline might occur.  (*See* FAC p.10:2-14.)  He contends the potential for further decline increased the risk of a deficiency judgment.  (FAC pp.85:26-87:10.)

The only other reference to causation is a conclusory paragraph:

As a direct and proximate result of the Defendants' unlawful, unfair and fraudulent business practices in violation of the UCL, Plaintiff and the Class have lost money and property and suffered injury in fact, as follows: Firstly, … they paid money to Defendants to obtain loans that they would not have paid had the material facts been disclosed to them prior to loan origination.  Secondly, … Plaintiff and each member of the Class secured

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

repayment of their cash loans with a second mortgage on their homes not knowing at the time of loan origination that Countrywide had been engaged in business, lending and loan origination practices that diminished the value of their collateral and thereby increased the risk of a second mortgage deficiency judgment in the event of default. Thirdly, … had [Plaintiffs] been made aware that Countrywide was engaged in fraudulent business, lending and loan origination practices, they would not have entered into the loan transactions they subsequently entered into with the Defendants during the Class Period.

(FAC p. 85:26-87:10.)

### 2. <u>Marino Alleges No "But For" Causation</u>

To show cause-in-fact, Marino has to allege that, "but for" the alleged misconduct, he would not have done business with "Countrywide" – and that this refusal to do business would have averted his loss.   On the face of the First Amended Complaint, this is impossible, because had Marino obtained his loan elsewhere, the market value of his property would still have declined.

The generalized allegation that Defendants were participants in a grand scheme to lend nonconforming loans, even if true, also does nothing to satisfy Marino's burden to allege facts showing that, absent Defendants' alleged misconduct *towards Marino*, his property's value would not have declined.

There is no "but for" causation when plaintiffs "would suffer the same harm whether or not a defendant complied with the law….[T]he lack of causation is illustrated by the fact [plaintiffs] would suffer the same injury regardless of whether the [defendants] complied with or violated [the law]." *Daro v. Superior Court,* 151 Cal.App.4th 1079, 1099 (2007).  The First Amended Complaint does not allege that, absent the alleged misconduct, Marino would not have obtained a loan elsewhere. Marino cannot dispute – and the First Amended Complaint concedes – that California property owners who did not obtain loans from Countrywide and who did not interact with any Defendant suffered the same decline in property values.  (*See* FAC p.75:15.)  Marino cannot and does not plead facts showing that, if he had obtained a "cash-out refinance loan" with Citigroup, Wells Fargo, or a small local

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

1  bank or credit union, his damages would not have occurred.  "Homeowners who did

2  not obtain loans from Countrywide likewise suffered a decline in property values, a

3  decline in their home equity, and reduced access to their home equity line of

4  credit."  *Bank of America,* 198 Cal.App.4th at 873.  There is "no nexus between the

5  alleged [misconduct] by [Defendants] and the economic harm which these

6  plaintiffs/borrowers have suffered."  *Id.*

7          Marino also contends he suffered injury because, if Countrywide had

8  disclosed its loosened underwriting standards, he would not have paid the fees to

9  obtain the loan. (FAC pp. 85:26-87:10.)  But Marino would have had to pay the

10  fees, and thus would have paid those fees to Countrywide or another lender, whether

11  or not Countrywide disclosed changes to its underwriting standards.

12          **C.     Marino Fails to Allege A Material Omission Or Reliance**

13          Marino contends Countrywide failed to disclose that its "loan processing

14  assessments . . . materially increased the risk that any member of the Class who

15  defaulted on their second mortgage debt, would be subject to a deficiency judgment

16  . . . when the housing boom ended."  (FAC p. 29:24-28.)  Marino fails to allege facts

17  showing the materiality of the allegedly concealed facts or justifiable reliance.  *See*

18  *Bower v. AT & T Mobility, LLC*, 196 Cal.App.4th 1545, 1557 (2011); *Jatras v. Bank*

19  *of America Corp*., 2010 U.S. Dist. LEXIS 40074, *11 (D.N.J. Apr. 22, 2010) ("even

20  if [defendants] misrepresented … the debt to income, or the home appraisal, or even

21  if they side stepped their own internal controls to approve this loan, the only

22  representation they made was that Plaintiffs could have the money they requested").

23          Marino cannot show materiality or justifiable reliance on a failure to disclose

24  Countrywide's underwriting standards because those standards are for the lender's

25  benefit.   A lender is under no duty "to determine the borrower's ability to repay the

26  loan.... The lender's efforts to determine the creditworthiness and ability to repay by

27  a borrower are for the lender's protection, not the borrower's."  *Perlas v. GMAC*

28

*Mortg., LLC* 187 Cal.App.4th 429, 436 (2010); *see Lawrence v. Sadek*, 2013 WL 5771158 (C.D.Cal. 2013); *Renteria v. U.S.*, 452 F.Supp.2d 910, 922–923 (D. Ariz. 2006). For this reason, courts have rejected claims based on alleged failures to disclose appraisals: "[T]he borrower should be expected to know that the appraisal is intended for the lender's benefit to assist it in determining whether to make the loan, and not for the purpose of ensuring that the borrower has made a good bargain." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal.App.3d 1089, 1096 (1991); *see McGee v. First Federal Sav. & Loan Ass'n*, 761 F.2d 647, 648 (11th Cir. 1985) ("An appraisal is performed for the benefit of the lending institution. It is the 'consumer' of the appraisal product"). "[B]ecause Plaintiffs fail to . . . allege that the appraisals were for Plaintiffs' benefit or were provided to Plaintiffs for them to rely upon, the Court finds this alleged omission cannot support a plausible claim for fraud as to the Bank Defendants." *Salameh v. Tarsadia Hotels*, 2011 WL 1044129 (S.D.Cal. 2011), *aff'd*, 726 F.3d 1124 (9th Cir. 2013).

Even Marino admits that "the lenders [sic] loan processing assessments are made for the purpose of protecting the lenders [sic] interest in the loan transaction and not to induce borrowers to enter into loan transactions or to assure their borrowers that their loans are sound." (FAC pp.9:12-17; 72:24-74:4.)

Marino also cannot justifiably rely on allegedly concealed "speculative" predictions of future security and appreciation in value, which are merely opinions about future events. Concealing a future prediction is not fraud. "It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions" that cannot support a fraud claim. *Neu-Vision Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal.App.4th 303, 309-10 (2000); *see Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal.App.3d 860, 865 (1980); *Bayview Hunters Point Cmty. Adv. v. Metro. Transp. Comm*, 366 F.3d 692, 698 (9th Cir. 2004).

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

## D.   <u>Marino Fails To Allege A Duty To Disclose</u>

"Liability cannot arise from silence unless the law commands the defendant to speak." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.App.4th 858, 867 (2008).  A duty to disclose arises only if:  (1) the parties have a fiduciary relationship; (2) defendant has exclusive knowledge of material facts not known to plaintiff; (3) defendant actively conceals a material fact; or (4) defendant makes partial representations to plaintiff and suppresses material facts.  *Bank of America Corp. v. Sup. Ct.,* 198 Cal.App.4th 862, 871 (2011); *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997).  Each circumstance requires a relationship "as a result of some sort of transaction between the parties." *LiMandri,* 52 Cal.App.4th at 337.

Marino argues "Defendants" had a duty to disclose because they "actively hid, covered up and concealed the material facts from Plaintiff, Class and the general public [and] knew that Plaintiff and the Class were unaware of the material facts and could not with reasonable diligence discover the material facts."  (FAC p.83:19-25.)

These conclusory allegations lack factual support.  They are also contrary to law.

A "lender owes no duty of care to the borrowers in approving their loan. A lender is under no duty to determine the borrower's ability to repay the loan. The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Das v. WMC Mortg. Corp.,* 831 F.Supp.2d 1147, 1161 (E.D.Cal. 2011).   Countrywide had no duty to determine or disclose its assessment of Marino's ability to repay his loans or his risk of a deficiency judgment.  It also had no duty to disclose to Marino the ability of *other* borrowers to repay *their* loans.

Marino also alleges:  "By actively concealing its knowledge of the reasonably foreseeable effects its unsound lending practices would have on California home

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

values when the housing boom ended, Countrywide did so with one singular purpose in mind: To fraudulently induce post-June 2005 prospective borrowers to enter into loan transactions with Countrywide in reliance upon Countrywide's loan processing procedures." (FAC p. 28:6-10.)  But Marino cannot pursue a claim based on fraudulent concealment of an alleged fraudulent scheme.  This is true whether the supposed fraudulent scheme is directed at Marino or third parties.

"The general duty is not to warn of the intent to commit wrongful acts, but to refrain from committing them."  *LiMandri*, 52 Cal.App.4th at 338; *see Deteresa v. ABC*, 121 F.3d 460, 467 (9th Cir. 1997).  "We are aware of no authority supporting the imposition of additional liability on an intentional tortfeasor for failing to disclose his or her tortious intent before committing a tort."  *LiMandri*, 52 Cal.App.4th at 338.  "It is rather circular to say that defendants committed fraud by concealing their intent to commit fraud."  *Bank of America*, 198 Cal.App.4th at 872 (quotations omitted); *see also Groth-Hill Land Co., LLC v. Gen. Motors LLC*, 2013 WL 3853160 (N.D. Cal. July 23, 2013).

The *Bank of America* court rejected an effectively identical claim of fraudulent concealment.  There, plaintiffs alleged that Countrywide and its affiliates used "false property valuations to induce Plaintiffs and other borrowers into ever-larger loans on increasingly risky terms."  198 Cal.App.4th at 865.  Plaintiffs alleged Countrywide disregarded "underwriting standards ... in order to take business from legitimate mortgage providers, and moved on to massive securities fraud hand-in-hand with concealment from, and deception of, Plaintiffs and other mortgagees on an unprecedented scale."  *Id*. at 865.  They argued that Countrywide and its affiliates were "bound and obligated to fully and accurately disclose … that the mortgage being offered to the Plaintiff was, in fact, part of a massive fraud that Countrywide knew would result in the loss of the equity invested by Plaintiff in his home and in severe impairment to Plaintiff's credit rating."  *Id*. at 865.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

IR01DOCS\686190.3

16

*Bank of America* held that these allegations did not support a fraudulent concealment claim:   "[W]e conclude that while Countrywide had a duty to refrain from committing fraud, it had no independent duty to disclose to its borrowers its alleged intent to defraud its investors by selling them mortgage pools at inflated values."  *Id*. at 872.

As the California Supreme Court cautioned in *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 n.4, (1993):  "through clever pleading, every fraud case based on material misrepresentation [can] be converted facilely into a material omissions case."  If Marino's "convert fraud to concealment of fraud" ploy were correct, then every intentional tort claim arising out of a commercial relationship could give rise to a fraudulent concealment claim based on the failure to disclose the intended tort.  A terminated employee alleging defamation against her employer would be entitled to claim fraudulent concealment of the intent to defame.  A shopping mall alleging nuisance against one of its stores would be entitled to claim fraudulent concealment.  A tenant alleging conversion – or battery or trespass – against his landlord would be entitled to pile on a fraudulent concealment claim.

This theory would not only furnish millions of loan customers with a fraudulent concealment claim, but also make any commercial enterprise, whether a one-person consultancy or a multinational corporation, the guarantor of its customers' risks.  Anyone whose property, real or personal, declined in value could pursue fraud claims against the seller, the financer, the service provider, or anyone else connected with the property by alleging that they concealed fraud or other misconduct directed at the claimant or a third party.  A purchaser of securities could use this reasoning to circumvent the shorter statutes of limitations for fraud under state and federal securities law by suing for fraudulent concealment of the securities fraud.  *See Mirkin,* 5 Cal. 4th at 1093 n.4.

There is no independent duty to warn Marino of an intention to defraud him

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  or anyone else.  *Bank of America*, 198 Cal.App.4th at 872.

2  **VI.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A**

3  **UCL CLAIM**

4        Marino relies on the same conclusory and deficient allegations to support his

5  UCL claim. (FAC p.85:6-7).  The First Amended Complaint does not allege

6  standing/causation/injury-in-fact and does not fulfill any UCL predicate.

7        **A.    Marino Does Not Allege Standing/Causation/Injury-in-Fact**

8        Standing to pursue a UCL claim is limited to private plaintiffs who have

9  "suffered injury in fact and … lost money or property as a result of such unfair

10  competition."  *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590 (2008)

11  (citations omitted); *see* Bus. & Prof. Code § 17204.  Marino must allege facts

12  sufficient to show a "causal connection" between "the economic injury and the

13  alleged unfair conduct."  *Jenkins v. JPMorgan Chase*,  216 Cal.App.4th 497, 522

14  (2013); *see Hall v. Time, Inc*. 158 Cal.App.4th 847, 855 (2008) .  A plaintiff fails to

15  show causation under the UCL if he or she would have suffered "the same harm

16  whether or not a defendant complied with the law."  *Daro,* 151 Cal.App.4th at 1099.

17  The mere risk of foreclosure and a deficiency judgment does not create UCL

18  standing.  *See Jensen v. Quality Loan Serv. Corp.*, 702 F.Supp.2d 1183, 1199 (E.D.

19  Cal. 2010) (plaintiff lacked UCL standing when foreclosure had not occurred).

20        The UCL "imposes an actual reliance requirement."  *In re Tobacco II Cases*,

21  46 Cal.4th 298, 326 (2009).  Marino must allege facts showing that the supposed

22  misconduct was an "immediate cause of the injury producing conduct."  *Id.*  When

23  the pleaded facts "do not naturally give rise to an inference of causation the plaintiff

24  must plead specific facts affording an inference the one caused the other []."  *Animal*

25  *Legal Defense Fund v. Mendes*, 160 Cal.App.4th 136, 146 (2008) ; *see Christensen*

26  *v. Superior Court*, 54 Cal.3d 868, 900–01 (1991).  Moreover, "a UCL fraud plaintiff

27  must allege he or she was motivated to act or refrain from action based on the truth

28

or falsity of a defendant's statement, not merely on the fact it was made." *Kwikset Corp. v. Superior Court*,  51 Cal.4th 310, 327, fn. 10 (2011); *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, * 5 (C.D.Cal. 2013).

As shown above in Section V(B), Marino fails to show causation or materiality and reliance; he thus fails to show UCL standing.

**B.   Marino Does Not Allege A UCL Predicate**

**1.    Marino Does Not Allege Fraudulent Conduct**

To plead a claim under the UCL's fraudulent prong, Marino must allege that Defendants engaged in "fraudulent" conduct that is likely to deceive members of the public. *Casault v. Federal Nat. Mortg. Ass'n*, 915 F.Supp.2d 1113, 1129-30 (C.D.Cal. 2012)  "Although a UCL claim need not plead [all] elements of common law fraudulent deception, it must allege the existence of a duty to disclose, as well as reliance[.]" *Id.*, *quoting Pinel v. Aurora Loan Services, LLC,* 814 F.Supp.2d 930, 941 (N.D.Cal.2011) (citations omitted).

As shown above in Section V(C) and (D), Marino fails to allege anything sufficient to show a duty to disclose or materiality and reliance.

**2.    Marino Does Not Allege Unlawful Conduct**

A "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal.App.4th 1544, 1554 (2007).  The First Amended Complaint does not allege that any Defendant violated any statute or regulation, and thus fails to fulfill the "unlawful" prong. *Scripps Clinic v. Superior Court,* 108 Cal.App.4th 917, 938 (2003).

Marino only concludes "Defendants' business practices . . . violated the requirements of Code of Civil Procedure, § 580(d)."  (FAC, p. 85.)  Marino's bare conclusion fails to state a claim.  Legal conclusions and conclusory statements are insufficient, and are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009).

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

19

1      Further, there is no Code of Civil Procedure section "580(d)." Marino

2 presumably meant Code of Civil Procedure section 580d. This provision prohibits a

3 deficiency judgment following a nonjudicial foreclosure sale. *See* Cal. Civ. Proc.

4 Code § 580d. But Marino alleges Defendants have not foreclosed. (FAC p.11:18-

5 19, 22-27.) Marino fails to allege facts supporting any violation of Section 580d.

6 Instead, his allegations demonstrate Section 580d is inapplicable. (*See* FAC

7 p.11:18-19, 22-27.)

8      To the extent this claim is premised solely on the fraudulent concealment

9 allegations, it fails for the same reasons.

10              **3.**     **Marino Does Not Allege Unfair Conduct**

11      "Unfair" conduct under the UCL "offends an established public policy

12 or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to

13 consumers." *Scripps*, 108 Cal.App.4th at 939. "[C]ourts may not apply purely

14 subjective notions of fairness." *Id.* at 941. Instead, the claim must be "tethered" to

15 a constitutional, statutory, or regulatory provision to find an objective basis for

16 determining whether conduct is unfair. *Id.* at 940.

17      The First Amended Complaint fails to connect the supposed misconduct to

18 any constitutional, statutory, or regulatory provision, and alleges nothing to

19 distinguish the "unfair" claim from the "unlawful" and "fraudulent" claims. The

20 claim is based on the same defective fraudulent concealment theory. Marino fails to

21 establish this predicate.

22 **VII.**   **THE COMPLAINT FAILS UNDER RULES 9(B) AND 12(B)(6)**

23      Even if the First Amended Complaint presented a ripe controversy that was

24 not time-barred and did not otherwise fail as a matter of law, it should be dismissed

25 for failing to provide "fair notice of what the claim is and the grounds upon which it

26 rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and

27 modification omitted).

28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

IR01DOCS\686190.3

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

The First Amended Complaint is a shotgun pleading, without any allegations in numbered paragraphs as required by Rule 10(b).  All 84 pages of its initial allegations are incorporated by reference *en masse* into the two claims, without any identification of which allegations support which claim.  It is impossible for Defendants to frame a meaningful factual denial of its content.

To meet the notice requirement, a complaint must be supported by factual allegations, rather than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), *citing Twombly*, 550 U.S. at 555.  Legal conclusions and conclusory statements are insufficient, and are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 664.  A complaint also fails under Rule 12(b)(6) "if there is a lack of a cognizable legal theory or [an] absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).

Because Marino's claims sound in fraud, they must be alleged with particularity under Fed. R. Civ. P. 9(b).  *See Apodaca v. Whirlpool Corp*., 2013 WL 6477821, * 5 (C.D. Cal. 2013) (Rule 9(b) applies to UCL claims).  Rule 9(b) also requires Marino to 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 765 (9th Cir.2007), *quoting Moore v. Kayport Package Express,* 885 F.2d 531, 541 (9th Cir.1989).

Marino must allege the specific circumstances constituting fraud such that Defendant has notice of the actual misconduct.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  "Because fraud claims "raise a high risk of abusive litigation," Rule 9(b) demands that "averments of fraud ... be accompanied by the who, what, when, where and how of the misconduct charged." *Tait v. BSH Home Appliances Corp*., 2011 WL 1832941, * 2 (C.D.Cal. 2011), *quoting Twombly,* 550 U.S. at 569 n. 14 *and Vess v. Ceigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Khoury v. Maly's of Cal., Inc.*, 14 Cal.App.4th 612, 619 (1993); *Bennett v.*

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

*Suncloud*, 56 Cal.App.4th 91, 95-96 (1997) (dismissing UCL claim that lumped defendants together and failed to specify which defendant performed which alleged acts).

The First Amended Complaint fails to satisfy any of these standards.  Marino fails to allege the particular facts constituting fraud or a UCL violation.  He fails to allege which of the several Defendants did what, when, where, and how.  Instead, he incorporates by reference 84 pages of allegations about wrongful conduct by multiple individuals and entities that supposedly took place over the last decade – including allegations from other lawsuits – without identifying what facts, if any, support his claim.  (*See* FAC pp.82:25-26, 85:6-7.)  On this basis alone, Marino's claims fail.

## VIII.  <u>THE COMPLAINT FAILS TO SATE A CLAIM AGAINST BANK OF AMERICA CORPORATION, OR BANK OF AMERICA, N.A.</u>

The First Amended Complaint also fails to state any facts supporting a claim against defendant Bank of America Corporation ("BAC") and Bank of America, N.A. ("BANA").  As to BAC, Marino alleges "upon information and belief" it is the successor-in-interest to Countrywide "and has thus assumed liability for the conduct of Countrywide alleged herein."  (FAC p. 14:1-3.)  As to BANA, Marino asserts it "participated in B of A's acquisition of substantially all of Countrywide Financial" and is a successor-in-interest to Countrywide.  (FAC p. 14:6-8.)  Marino alleges BAC and BANA "effected a de factor merger with Countrywide," through the "Red Oak Merger" and subsequent transactions. (FAC pp. 77:11, 78:15-79:81:9).  He alleges various BAC and BANA representatives have "made public statements admitting" that these companies "intended to clean[] up" Countrywide's liabilities.  (FAC p. 81:10-14.)

These allegations, like the nearly identical allegations made by plaintiffs in numerous other cases, fail to state any derivative claim against BAC and BANA for

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

the purported acts of "Countrywide."  California courts have consistently held these facts fail to support successor liability.  *See e.g.*, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F.Supp.2d 1216, 1230–34 (C.D. Cal. 2012); *Minnesota Life Ins. Co. v. Countrywide Fin. Corp.*, No. 12-CV-06149-MRP (MANx), 2012 WL 6742119, at *7-8 (C.D. Cal. Dec. 6, 2012); *see also In re Countrywide Fin. Corp. Mortgage-Backed Secs. Lit.*, No. 2:11–ML–02265–MRP (MANx), 2013 WL 1881567, at *21 (C.D. Cal. May 6, 2013) (applying Delaware law to determine 2008 transactions did not constituted a *de facto* merger); *Maine State Ret. Sys.*, No. 2:10-CV-0302 MRP (MANs), 2011 WL 1765509, at *4-8 (C.D. Cal. April 20, 2011) (same).

This Court should follow their lead and dismiss BAC and BANA with prejudice on this independent ground.

## IX.   **CONCLUSION**

For these reasons, the Court should dismiss the First Amended Complaint with prejudice.

Dated:  February 3, 2014

Stuart W. Price
Aileen M. Hunter
Katherine M. Harrison
**BRYAN CAVE LLP**


By:   */s/ Aileen M. Hunter*

Aileen M. Hunter
Attorneys for Defendants
COUNTRYWIDE FINANCIAL
CORPORATION (erroneously sued as
"Countrywide Financial Corporation, (n.k.a.
Bank  of America Home Loans)");
COUNTRYWIDE HOME LOANS, INC.;
BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## PROOF OF SERVICE
### CCP 1013A(3) REVISED 5/1/88

1

2    ***Anthony Marino, etc. v. Countrywide Financial Corp., et al.***
     Case No. SACV14-00046-JLS-ANx
3

4    STATE OF CALIFORNIA, COUNTY OF ORANGE

5        I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is:  3161 Michelson Drive, Suite 1500, Irvine, CA  92612-4414.

6        On **February 3, 2014**, I served the foregoing document(s) described as:

7    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES 9(b), 12(b)(1), AND 12(b)(6)**

8

9

10       on all interested parties in this action by placing ☒ a true copy ☐ the original thereof enclosed in sealed envelopes addressed as follows:

11   George H. Spizzirri                          Attorneys for Plaintiff
     806 E. Avenida Pico, Suite I - #313          Phone:  949-218-4765
12   San Clemente, CA 92673                       Fax:  949-218-6737
                                                  Email:
13                                                goergespizzirri@gmail.com

14

15

16       ☒ BY CM/ECF NOTICE OF ELECTRONIC FILING:  I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

17

18       ☒ FEDERAL - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

19

     Executed on **February 3, 2014**, at Irvine, California.

20

21                                  _Angelina Andrade_
                                    Angelina Andrade
22

23

24

25

26

27

28

685461.1.1

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414