Robert E. Boone III (SBN 132780)
Nafiz Cekirge (SBN 255710)
**BRYAN CAVE LLP**
120 Broadway, Suite 300
Santa Monica, California  0401-2386
Telephone:  (310) 576-2100
Facsimile:   (310) 576-2200
E-mail:       reboone@bryancave.com
                   nafiz.cekirge@bryancave.com

Stuart W. Price (SBN 125918)
Aileen M. Hunter (SBN 253162)
**BRYAN CAVE LLP**
3161 Michelson Drive, Suite 1500
Irvine, California  92612-4414
Telephone:  (949) 223-7000
Facsimile:   (949) 223-7100
E-mail:       swprice@bryancave.com
                   aileen.hunter@bryancave.com

Attorneys for Defendants
COUNTRYWIDE FINANCIAL CORPORATION (erroneously sued as "Countrywide Financial Corporation (n.k.a. Bank of America Home Loans)"); COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| ANTHONY MARINO, on behalf of himself and all others similarly situated, <br><br>Plaintiff, <br><br>v. <br><br>COUNTRYWIDE FINANCIAL CORPORATION (n.k.a. Bank of America Home Loans); COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORP., BANK OF AMERICA N.A., and DOES 1-100, inclusive, <br><br>Defendants. | Case No. SACV14-00046 JLS (ANx) <br><br>**DEFENDANTS' OPPOSITION TO MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1332(d)** <br><br>[Filed Concurrently with Declaration of Nafiz Cekirge] <br><br>Hon. Josephine L. Staton <br><br>Date:        April 11, 2014 <br>Time:       2:30 p.m. <br>Courtroom: 10A |

SM01DOCS\1022574.7

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. BACKGROUND ..................................................................................................1

    A. The State Court Action And Removal To This Court ............................1

    B. The Allegations Of The First Amended Complaint................................2

    C. The Putative Class....................................................................................3

    D. The Remand Motion ................................................................................4

III. THIS COURT HAS JURISDICTION .................................................................4

IV. THE "HOME STATE CONTROVERSY" EXCEPTION DOES NOT APPLY ...................................................................................................................5

    A. The Bank of America Defendants Are "Primary Defendants"...............6

V. THE "LOCAL CONTROVERSY" EXCEPTION DOES NOT APPLY.......10

    A. The Principal Injuries Are Not Limited To California .........................11

    B. Class Actions Filed In The Last Three Years .......................................14

VI. CONCLUSION ..................................................................................................15

# TABLE OF CONTENTS

**Page**

**Cases**

*Brook v. UnitedHealth Grp. Inc.*,
 No. 06 CV 12954, 2007 U.S. Dist. LEXIS 73640 (S.D.N.Y. Sept. 27, 2007) .................................................................................................................. 7

*Caruso v. Allstate Ins. Co.*,
 469 F. Supp. 2d 364 (E.D. La. 2007) ................................................................. 10

*Certain Underwriters at Lloyd's of London v. Pac. Sw. Airlines*,
 786 F. Supp. 867 (C.D. Cal. 1992) ...................................................................... 9

*Copper Sands Homeowners Assoc., Inc. v. Copper Sands Realty, LLC*,
 Case No.: 2:10-cv-00510-GMN-LRL, 2011 U.S. Dist. LEXIS 27198 (D. Nev. Mar. 16, 2011) ................................................................................... 6, 7, 8

*Giannini v. Northwestern Mut. Life Ins. Co.*,
 No. C 12-77 CW, 2012 U.S. Dist. LEXIS 60143 (N.D. Cal. Apr. 30, 2012) ....... 14

*Kearns v. Ford Motor Co.*,
 No. CV 05-5644 GAF(JTLX), 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. Nov. 21, 2005) .......................................................................................... 6, 10, 12

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
 707 F.3d 1136 (9th Cir. 2013) ......................................................................... 5, 11

*Phillips v. Kaiser Found. Health Plan, Inc.*,
 953 F. Supp. 2d 1078 (N.D. Cal. 2011) ..................................................... 5, 7, 8, 12

*Saudi Am. Bank v. Shaw Grp., Inc. (In re Stone & Webster, Inc.)*,
 558 F.3d 234 (3d Cir. 2009) ............................................................................. 8, 9

*Serrano v. 180 Connect, Inc.*,
 478 F.3d 1018 (9th Cir. 2007) ............................................................................. 6

*Villalpando v. Exel Direct Inc.*, C-12-04137 JCS, 2012 U.S. Dist. LEXIS 160631 (N.D. Cal. Nov. 8, 2012) ........................................................... 7, 8, 9, 12

*Vodenichar v. Halcón Energy Props.*,
 733 F.3d 497 (3d Cir. 2013) .............................................................................. 14

*Waller v. Hewlett-Packard Co.*, Case No. 11cv0454-LAB (RBB),
 2011 U.S. Dist. LEXIS 50408 (S.D. Cal. May 10, 2011) .................................. 12

**Statutes**

28 U.S.C. § 1332(d)(3) ............................................................................................ 4

28 U.S.C. § 1332(d)(4)(A) .................................................................................. 4, 11

28 U.S.C. § 1332(d)(4)(A)(i)(II) ............................................................................ 10

28 U.S.C. § 1332(d)(4)(A)(ii) ................................................................................. 14

28 U.S.C. § 1332(d)(4)(B) .................................................................................... 4, 5

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Cal. Bus. & Prof. Code §17200 *et seq.* ........................................................................... 3

Class Action Fairness Act, 28 U.S.C. § 1332(d) ............................................................. 1

**Other Authorities**

S. Rep. 109-14 (2005),
 *as reprinted in* 2005 U.S.C.C.A.N. 3 ............................................................... 8, 10

## I. INTRODUCTION

Bank of America, N.A. ("BANA") removed this putative class action from California Superior Court to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. section 1332(d) ("CAFA"). This Court has jurisdiction because the case meets CAFA's minimal diversity, numerosity, and amount in controversy requirements.

In seeking to remand this case to state court, Plaintiff Anthony Marino does not challenge this Court's jurisdiction. Rather, he contends the Court should decline jurisdiction under CAFA's "home state controversy" and "local controversy" exceptions. Marino fails to carry his burden of showing either exception applies.

The party invoking the "home state controversy" exception must establish that *all* "primary defendants" are citizens of the forum state. Marino cannot do this. Two "primary defendants," BANA and Bank of America Corporation ("BAC") (collectively, "Bank of America" or the "Bank of America Defendants"), are citizens of other states.

The party invoking the "local controversy" exception must establish that the "principal injuries" alleged in the complaint are limited to the forum state, and that no one has filed any similar class actions against any defendant in the preceding three years. Marino cannot do this. The First Amended Complaint alleges "principal injuries" that are national in scope because they arise out of the nationwide lending practices of Countrywide Financial Corporation ("CFC") and Countrywide Home Loans, Inc.'s ("CHL") (collectively, "Countrywide" or the "Countrywide Defendants"). Moreover, at least two similar class actions have been filed against Defendants in the last three years.

This Court should deny the motion to remand.

## II. BACKGROUND

### A. The State Court Action And Removal To This Court

On November 25, 2013, Marino commenced this class action by filing a

BRYAN CAVE LLP, 120 BROADWAY, SUITE 300, SANTA MONICA, CA 90401-2386

Complaint in California Superior Court. Marino did not serve Defendants.

On December 5, 2013, Marino filed a First Amended Complaint. (Dckt. # 1 at 9, FAC 1.) On December 13, 2013, Marino served BANA with the First Amended Complaint. (Dckt. # 1 at 2, Notice of Removal ¶ 2.)

On January 14, 2014, BANA removed the action to this Court pursuant to CAFA because: (1) minimal diversity existed; (2) the proposed class had more than 100 members; and (3) the amount in controversy exceeded $5 million. (Dckt. # 1 at 2-4, Notice of Removal ¶¶ 6-15.)

### B. The Allegations Of The First Amended Complaint

The First Amended Complaint alleges as follows. Until 2003, Countrywide mainly originated low-risk "conforming" loans. (Dckt. # 1 at 26, First Amended Complaint ("FAC") 18:24.) Beginning in 2003, in response to a "rising demand on Wall Street for 'private label' securitizations of non-conforming loans," Countrywide "implemented a new aggressive growth strategy . . . to double its share of the national residential market largely through the origination of non-conforming adjustable rate loans (ARMs)," subprime loans, and home equity lines of credit. (Dckt. # 1 at 27, 29, FAC 19:4-19:5, 19:11-19:13, 21:4-21:28.)

Under pressure to originate more loans to fulfill this growth strategy, Countrywide began "abandon[ing] . . . sound underwriting practices." (Dckt. # 1 at 30, FAC 22:22.) Countrywide permitted "borrowers to state their income and/or assets in the loan application without providing income or asset documentation or providing limited documentation that Countrywide in its business, lending and origination practices, elected not to validate or verify." (Dckt. # 1 at 34, FAC 26:3-26:6.) Countrywide also developed an "Exception Processing System . . . that enabled it to justify approval of thousands of income deficient loans per week that were layered with additional credit risk features that further increased the likelihood of default, such as 100% financing, lower than average FICO scores, or non-owner occupied status." (Dckt. # 1 at 34, FAC 26:6-26:9.)

Countrywide also "implemented an advertising and marketing strategy designed to lull borrowers into believing that Countrywide was a 'trusted advisor' looking out for the borrower's best interests while at the same time its high-pressured wholesale and retail sales forces were leading borrowers into originating loans they could not afford." (Dckt. # 1 at 34, FAC 26:9-26:13.)

Countrywide's growth initiative and revised loan origination practices were national in scope. Countrywide originated 2 million non-conforming loans nationwide, including 804,000 in California. (Dckt. # 1 at 30, FAC 22:7-22:17.) Of these, 270,000 to 360,000 were "income deficient" loans, including 112,500 to 150,000 in California. (Dckt. # 1 at 35, FAC 27:16-27:18.)

The result was a "mountain of bad loans," which led to an increase in nationwide foreclosures, which led to an increase in nationwide "price declines in home values below the aggregate principal loan balances of a high percentage of borrowers who had originated loans after June of 2005." (Dckt. # 1 at 30, 75, FAC 22:22, 67:19-67:20.)

The Bank of America Defendants "assumed the liabilities of Countrywide" when BAC purchased CFC and its affiliates. (Dckt. # 1 at 90, FAC 82:15.) Moreover, "Bank of America's most senior executives and spokespersons" publicly acknowledged this assumption of liabilities, and explained that Bank of America had "factored those [liabilities] into the purchase price" of the transaction. (Dckt. # 1 at 89, FAC 81:11-81:12, 81:19.)

### C. The Putative Class

Marino seeks to sue on behalf of a class of California property owners who entered into cash-out refinance transactions that included first and second loans with Countrywide between July 1, 2005, and July 17, 2008. (Dckt. # 1 at 22, FAC 14:14-14:23.) He asserts claims against all Defendants for: (1) declaratory relief; and (2) violations of California Business and Professions Code sections 17200 *et seq.* (Dckt. # 1 at 90, 93, FAC 82:23-82:24, 85:3-85:5.) Marino contends that

1  Countrywide concealed that its risky loan origination practices between 2003 and
2  2008 would cause class members' property values to drop below their aggregate
3  loan balances and put class members at risk of deficiency judgments in the event of
4  judicial foreclosure. (Dckt. # 1 at 91, FAC 83:6-83:12.)

5  Marino contends that class members suffered injuries because they paid loan
6  origination fees to Defendants that they would not have paid had they known of
7  Countrywide's purported business practices, and because their home values
8  diminished as a result of Countrywide's alleged lending practices, which left them
9  susceptible to deficiency judgments. (Dckt. # 1 at 93-94, FAC 85:26-86:10.)

10 Marino seeks a declaration that class members are not liable for any
11 deficiency judgments, as well as restitution and disgorgement of profits. (Dckt. # 1
12 at 95, FAC 87:1-87:26.) He alleges that all Defendants are jointly and severally
13 liable to the full extent of any judgment rendered in this action. (Dckt. # 1 at 94,
14 FAC 86:28.)

### D. The Remand Motion

16 On March 5, 2014, Marino moved to remand this action to state court. (Dckt.
17 15-1, Mot.) Marino does not contend that this Court lacks CAFA jurisdiction or that
18 removal was procedurally defective, but rather argues that this Court is required to
19 decline jurisdiction under CAFA's "home state controversy" and "local
20 controversy" exceptions codified at 28 U.S.C. sections 1332(d)(4)(B) and
21 1332(d)(4)(A) respectively.[1] (Dckt. 15-1, Mot. 2:8-2:16.)

### III. THIS COURT HAS JURISDICTION

23 A federal district court has original and removal jurisdiction over a class

---

[1] Marino mistakenly cites 28 U.S.C. section 1332(d)(3). (Dckt. 15-1, Mot. 2:9, 2:16.) That section does not codify either the "home state controversy" or "local controversy" exception, but rather describes a different discretionary exception that only applies if "greater than one-third but less than two-thirds" of class members are citizens of the forum state. 28 U.S.C. § 1332(d)(3). Here, the alleged class consists entirely of California citizens. (Dckt. 15-1, Mot. 6:9-6:16.)

action under CAFA if: (1) there is minimal diversity of citizenship; (2) the proposed class has at least 100 members; and (3) the amount in controversy exceeds $5 million. *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). This class action was properly removed because it meets these requirements. (Dckt. # 1 at 2-4, Notice of Removal ¶¶ 6-15; Dckt. # 5, Declaration of K. Cacho ("Cacho Decl.") ¶¶ 6-15, Ex. 1.)

Marino concedes that this Court has CAFA jurisdiction. (Dckt. # 15-1, Mot. 2:8-2:9.) But he argues that "CAFA requires [this Court] to decline jurisdiction" under the "home state controversy" and "local controversy" exceptions. (Dckt. # 15-1, Mot. 2:9-2:11.) Marino cannot show that either exception applies.

## IV. THE "HOME STATE CONTROVERSY" EXCEPTION DOES NOT APPLY

As its name suggests, the "home state controversy" exception is not jurisdictional, but rather an exception to jurisdiction. *See Kuxhausen*, 707 F.3d at 1140 n.1. Thus, "the obligation to raise and prove" the exception "rests on the party seeking remand." *Id.*

The "home state controversy" exception requires a federal court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332 (d)(4)(B). There can be multiple "primary defendants"; for the exception to apply, "all 'primary defendants' [must] be residents of the same state in which the action is filed." *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011).

As Marino states, the issue here "is whether one or both of the Bank of America Defendants are 'primary defendants.'" (Dckt. # 15-1, Mot. 6:26-6:27.) The Countrywide Defendants are California citizens. (Dckt. 15-1, 6:18-6:21.) BAC

is a citizen of both Delaware and North Carolina.[2] (Dckt. # 1 at 21, FAC 13:27-13:28.) BANA is a North Carolina citizen. (Dckt. # 1 at 3, Notice of Removal ¶¶ 9-10; Dckt. # 5, Cacho Decl. ¶¶ 7-8.) Thus, if BANA or BAC is a "primary defendant," the "home state controversy" exception does not apply.

The Bank of America Defendants are "primary defendants" because the First Amended Complaint seeks to hold them directly liable to the class to the full extent of any judgment. The fact that the Bank of America Defendants' liability may be based on their alleged status as successors-in-interest to the Countrywide Defendants is irrelevant.

### A. The Bank of America Defendants Are "Primary Defendants"

The term "'[p]rimary defendant' is not defined in [CAFA], and the Ninth Circuit has expressly declined to address definition of the term." *Copper Sands Homeowners Assoc., Inc. v. Copper Sands Realty, LLC*, Case No.: 2:10-cv-00510-GMN-LRL, 2011 U.S. Dist. LEXIS 27198, at *8 (D. Nev. Mar. 16, 2011). But district courts throughout the country have interpreted the term.

Some courts "have emphasized the requirement that primary defendants be those parties that are allegedly directly liable to the plaintiffs," as opposed to "those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification." *Id.* at *11 (quotation marks and citations omitted). *See also Kearns v. Ford Motor Co.*, No. CV 05-5644 GAF(JTLX), 2005 U.S. Dist. LEXIS 41614, at *26 (C.D. Cal. Nov. 21, 2005) ("[A] 'primary defendant' is any with direct liability to the plaintiffs."), *overruled on other grounds by Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007).

Other courts agree with this analysis, but add that "a defendant [also] may be

---

[2] The First Amended Complaint alleges that BAC is a "Delaware corporation with its principal executive offices in Charlotte, North Carolina." (Dckt. # 1 at 21, FAC 13:27-13:28.) As such, BAC is a citizen of both states. *See* 28 U.S.C. § 1332(c)(1).

SM01DOCS\1022574.7         6
DEFENDANTS' OPPOSITION TO MOTION TO REMAND

considered a 'primary defendant' if, based on the allegations in the complaint, it has substantial exposure to significant portions of the proposed class in the action, or is allegedly liable to the vast majority of the members of the proposed classes, even if that defendant faces only derivative liability." *Villalpando v. Exel Direct Inc.*, C-12-04137 JCS, 2012 U.S. Dist. LEXIS 160631, at *23 (N.D. Cal. Nov. 8, 2012).

Yet other Courts hold that a party is a "primary defendant" if all causes of action are asserted against it and "there is no indication that Plaintiff would not seek recovery" from that defendant. *Phillips*, 953 F. Supp. 2d at 1086. *See also Brook v. UnitedHealth Grp. Inc.*, No. 06 CV 12954, 2007 U.S. Dist. LEXIS 73640, at *21 (S.D.N.Y. Sept. 27, 2007) (holding that "there is no rationale basis upon which to differentiate the defendants' status as being primary or secondary" because "all of plaintiffs' claims are spread equally among all defendants . . . [a]ll class members have the same claims against all defendants . . . [and] plaintiffs are seeking to hold all defendants [ ] jointly and severally liable." (second alteration in the original) (quotation marks and citation omitted)).

Finally, some courts have "described a primary defendant as one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action." *Copper Sands Homeowners Assoc., Inc.*, 2011 U.S. Dist. LEXIS 27198, at *9 (quotation marks and citation omitted).

In addition, the Senate Judiciary Committee defined "primary defendant" as used in other CAFA sections as follows:

> [T]he Committee intends that "primary defendants" be interpreted to reach those defendants who are the real "targets" of the lawsuit—*i.e.*, the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include

any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

S. Rep. 109-14, 43 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 41.

Under any of these approaches, the Bank of America Defendants are "primary defendants." For starters, as discussed above, the First Amended Complaint alleges that the Bank of America Defendants are directly liable to the class because they knowingly assumed the Countrywide Defendants' liabilities. *See Saudi Am. Bank v. Shaw Grp., Inc. (In re Stone & Webster, Inc.)*, 558 F.3d 234, 241 (3d Cir. 2009) ("When a buyer expressly assumes liabilities of a seller, it becomes directly liable therefore, regardless of any language in the sale agreement otherwise purporting generally to disclaim third-party beneficiary rights." (quotation marks and citation omitted)).

Second, the First Amended Complaint does not distinguish between the alleged liabilities of the Bank of America Defendants and the Countrywide Defendants. As discussed above, "[b]oth . . . causes of action [in the First Amended Complaint] are asserted against 'all Defendants,' and there is no indication that [the class] would not seek recovery against [the Bank of America Defendants] if Defendants are found liable." *Phillips*, 953 F. Supp. 2d at 1086. Moreover, also as discussed above, Marino seeks to hold the Bank of America Defendants jointly and severally liable to the full extent of any judgment, leaving them with "substantial exposure to significant portions of the proposed class," and with "liab[ility] to the vast majority of the members of the proposed class." *Villalpando*, 2012 U.S. Dist. LEXIS 160631, at *23.

Third, the First Amended Complaint indicates that the Bank of America Defendants are "most able to satisfy" any judgment," *Copper Sands Homeowners Assoc., Inc.*, 2011 U.S. Dist. LEXIS 27198, at *9 (quotation marks and citations

1 omitted), because they purchased all of the Countrywide Defendants' "productive
2 assets," (Dckt. # 1 at 86, FAC 78:3, *see also* Dckt. # 1 at 88, FAC 81:7-81:8).

3     Marino contends that the Bank of America Defendants are not "primary
4 defendants" for two reasons. First, drawing on the "direct liability" language in the
5 cases, Marino argues that as mere successors to the Countrywide Defendants, the
6 Bank of America Defendants do not have any "direct liability to Plaintiff Class."
7 (Dckt. # 15-1, Mot. 10:23-10:24.)

8     But as discussed above, because Marino alleges that the Bank of America
9 Defendants knowingly assumed the Countrywide Defendants' liabilities, they are
10 "directly liable therefore." *Saudi Am. Bank*, 558 F.3d at 241 (quotation marks and
11 citation omitted); *see also Certain Underwriters at Lloyd's of London v. Pac. Sw.*
12 *Airlines*, 786 F. Supp. 867, 871 (C.D. Cal. 1992) (holding that when the buyer is "on
13 notice that it [is] purchasing [a company] subject to [its] debts and liabilities . . .,
14 successor liability is not the functional equivalent of vicarious liability.").

15     Marino's contention that the Bank of America Defendants will escape
16 liability if they "can show that they are not successors in interest to Countrywide" is
17 meaningless to the analysis. (Dckt. # 15-1, Mot. 10:27-10:28.) "[T]he focus of the
18 inquiry in determining which defendants are 'primary defendants' [is] on the
19 allegations in the complaint," not on the potential outcome of the case. *Villalpando*,
20 2012 U.S. Dist. LEXIS 160631, at *27. By Marino's reasoning, the Countrywide
21 Defendants also would not be "primary defendants" because they too may avoid
22 liability, which would lead to the absurd result of a case with no "primary
23 defendants."

24     Second, focusing on the Senate Judiciary Committee report, Marino claims
25 that as mere successors-in-interest to the Countrywide Defendants, "the Bank of
26 America Defendants' conduct is not a significant basis for the claims of Plaintiff and
27 the Class." (Dckt. # 15-1, Mot. 14:12-14:14.)

28     Marino's "significant basis" analysis conflates the "home state controversy"

1 and "local controversy" exceptions. The "local controversy" exception does not use
2 the term "primary defendant," but rather requires at least one defendant "from
3 whom significant relief is sought" and "whose alleged conduct forms a significant
4 basis for the claims asserted by the proposed plaintiff class" to be a citizen of the
5 forum state. 28 U.S.C. § 1332(d)(4)(A)(i)(II). Given that CAFA "[c]learly . . .
6 intended there to be a substantive difference between 'primary defendants' and
7 'significant defendants' as contemplated by the two exceptions," Marino's attempt
8 to blur this distinction is unsound. *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364,
9 369 (E.D. La. 2007).[3]

10 In fact, the Senate Judiciary Report defines a "primary defendant" as "any
11 person who has substantial exposure to significant portions of the proposed class in
12 the action, particularly any defendant that is allegedly liable to the vast majority of
13 the members of the proposed classes (as opposed to simply a few individual class
14 members)." S. Rep. 109-14, 43 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 41.
15 As discussed above, the First Amended Complaint seeks to hold the Bank of
16 America Defendants and the Countrywide Defendants jointly and severally liable,
17 leaving the Bank of America Defendants exposed to the entire class to the full extent
18 of any judgment.

19 **V.  THE "LOCAL CONTROVERSY" EXCEPTION DOES NOT APPLY**
20 The "local controversy exception" applies if:
21 (1) more than two-thirds of the class are citizens of the forum state;

---

[3] Marino appears to conflate "primary defendant" and "significant defendant" because a footnote in *Kearns* states that the Senate Judiciary Report defines both types of defendants as having "substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes." 2005 U.S. Dist. LEXIS 41614, at *27 n.9 (quotation marks and citation omitted). This simply means that a court should evaluate whether a defendant is a "primary defendant" or a "significant defendant" under this "substantial exposure" framework. It does not mean that the terms "primary defendant" and "significant defendant" are interchangeable.

1     (2) the principal injuries alleged in the complaint were incurred in the
2     forum state;
3     (3) at least one defendant, from whom significant relief is sought and
4     whose conduct forms a significant basis for the claims asserted, is a
5     citizen of the forum state; and
6     (4) during the preceding 3-year period, no other class action was filed
7     asserting the same or similar factual allegations against any defendant
8     on behalf of the same or other persons.

*See* 28 U.S.C. § 1332(d)(4)(A).

Like the "home state controversy" exception, the "local controversy" exception is not jurisdictional, rather but an exception to jurisdiction, thus requiring the party invoking the exception to prove its applicability. *See Kuxhausen*, 707 F.3d at 1140 n.1.

The exception does not apply here for two independent reasons: (1) the alleged principal injuries are not limited to California; and (2) at least two similar class actions were filed against Defendants in the last three years.

**A.** **<u>The Principal Injuries Are Not Limited To California</u>**

Even if a complaint limits class citizenship to a single state, the "local controversy" exception does not apply if the alleged principal injuries are multi-state or national in scope:

> [T]he [local controversy] exception . . . applie[s] narrowly . . . [to] truly local controversies . . . . If the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action . . . . In other words, [the] provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct— not just where the proposed class members were injured.

1  *Kearns*, 2005 U.S. Dist. LEXIS 41614, at *40 (sixth alteration in the original)
2  (internal block quote format and citation omitted).  As a result, district courts in the
3  Ninth Circuit have found the "local controversy" exception inapplicable if the
4  alleged injuries span several states:

- *Villalpando*, 2012 U.S. Dist. LEXIS 160631, at *35-*36 (holding that the local controversy exception does not apply because there is "nothing unique to California about the claims asserted in th[e] action, even if the class is limited to Plaintiffs who provide delivery services in California" ).
- *Phillips*, 953 F. Supp. 2d at 1086 (holding that the case is "not 'local' . . . even though it [is] defined narrowly to include only California plaintiffs" because it implicates defendant's nationwide practices).
- *Waller v. Hewlett-Packard Co.*, Case No. 11cv0454-LAB (RBB), 2011 U.S. Dist. LEXIS 50408, at *13-*15 (S.D. Cal. May 10, 2011) ("Plaintiff's action is local only in the trivial and almost tautological sense that the definition of the putative class and the legal bases of the asserted claims make it so.  Courts have routinely looked beyond these formalities—and looked to the nature and scope of the alleged wrong—and rejected a plaintiff's invocation of the local controversy exception that relies on them.  Even though there is no indication that Plaintiff's counsel envisions pursuing  relief against . . . Defendants in other states, the broader point here is that the . . . hard drives were marketed and sold nationwide, Plaintiff alleges nothing wrongful about their marketing and sale that is peculiar to California, and there is no reason to believe that the Defendants aren't vulnerable to suit on very similar grounds beyond California.  That isn't characteristic of a local dispute.").
- *Kearns*, 2005 U.S. Dist. LEXIS 41614, at *40 (holding that the "local controversy" exception does not apply, even though the class was limited to Californians, because the certified pre-owned vehicle program at issue

was "marketed nationwide" and "any injuries would have been suffered by consumers throughout the country").

Here, the First Amended Complaint implicates the Countrywide Defendants' nationwide mortgage origination practices: "[t]he violations of law alleged in this First Amended Complaint occurred in Los Angeles County and elsewhere throughout California and the United States." (Dckt. # 1 at 21, FAC 13:24-25.) (*See also* Dckt. # 15-1, Mot. 18:22-18:23 ("The FAC details . . . Countrywide's business, lending and loan origination practices on a nationwide basis over a five year period"); Decl. of N. Cekirge ("Cekirge Decl.") Ex. 1 at 4, Mem. from G. Spizzirri to N. Cekirge (1/20/2014) ("Clearly, the . . . allegations establish a nationwide pattern of conduct.")) *See also supra*, Part II.B, pp. 3:6-3:15. Thus, the alleged misconduct, if true, would have injured borrowers throughout the country.

For instance, Marino contends that class members were injured because "they paid money to Defendants to obtain loans that they otherwise would not have paid had the material facts been disclosed to them prior to loan origination." (Dckt. # 1 at 93, FAC 85:28-86:2.) But as discussed above, because Countrywide's alleged concealment during loan origination was national in scope, this injury would not be limited to Californians, but rather would affect all borrowers who transacted business with Countrywide throughout the United States.

Nevertheless, Marino contends that "the principal injuries were limited to California" because Countrywide only had enough market share in California "to cause [class members'] home prices to decline below [their] aggregate principal loan balances." (Dckt. # 15-1, Mot. 17:21, 24:13-24:14.) Several problems plague this theory.

First, the theory ignores the significant nationwide injury alleged in the First Amended Complaint discussed above: improper loan origination fees. Marino makes no effort to contend this particular injury was limited to California citizens.

Next, Marino's suggestion that the First Amended Complaint "does not

support the contention that income deficient loans were concentrated" in any market "other than California," so as to cause a decline in home values in those markets is false. (Dckt. # 15-1, Mot. 24:12-24:13.) The First Amended Complaint provides a table showing that median home prices fell in California *and the rest of the United States* during 2007-2011. (Dckt. # 1 at 77-78, FAC 69:27-70:2.) Nothing in the First Amended Complaint suggests that the impact of Countrywide's alleged lending practices was not felt nationwide. In fact, the First Amended Complaint suggests California was only "one regional marketplace"—among others—allegedly affected by Countrywide's practices. (Dckt. # 1 at 35, FAC 27:14.)

### B. <u>Class Actions Filed In The Last Three Years</u>

The "local controversy" exception applies only if "during the 3-year period preceding the filing of the subject class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S. Code § 1332(d)(4)(A)(ii). "[T]he 'no other class action' factor must not be read too narrowly. The inquiry is whether similar factual allegations have been made against the defendant in multiple class actions—and hence they are facing separate, distinct lawsuits—without regard to the procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories." *Vodenichar v. Halcón Energy Props.*, 733 F.3d 497, 508-09 (3d Cir. 2013). *See also Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 U.S. Dist. LEXIS 60143, at *17-*18 (N.D. Cal. Apr. 30, 2012) ("[T]he plain text of [CAFA] establishes that the requirement is concerned with whether the complaints had the same or similar factual allegations, not whether they had the same or similar causes of action or legal theories.").

Here, at least two class actions brought against Defendants preclude application of the "local controversy" exception. *Cabrera, et al. v. Countrywide Home Loans, Inc., et al.*, Case No. 11-cv-4869 (N.D. Cal.) was filed on September

1  30, 2011, less than three years before the filing of this lawsuit. (Cekirge Decl. Ex. 2
2  at 5 .) BAC, CFC, and CHL are defendants in *Cabrera*. (Cekirge Decl. Ex. 2 at 5.)
3  Like Marino, the plaintiff in *Cabrera* alleges that CHL, CFC and BAC "steer[ed]
4  borrowers into subprime mortgage and loans irrespective of whether . . . the
5  borrower was unable to meet the financial terms of the subprime mortgage" to
6  "maximize Countrywide's ability to make huge profits in the secondary market in
7  which subprime mortgages are bundled into securities and sold as investments."
8  (Cekirge Decl. Ex. 2 at 9 ¶ 15.)

9      *Abanto, et al. v. Bank of America, N.A., et al.*, 11-cv-5519 (D.N.J.) was filed
10 on September 22, 2011, also less than three years before this lawsuit. (Cekirge
11 Decl. Ex. 3 at 42.) BANA is a defendant in *Abanto*. (Cekirge Decl. Ex. 3 at 42)
12 Like this action, *Abanto* is based on the factual allegation that BANA "concealed . .
13 . the affordability" of its unconventional loan products from borrowers. (Cekirge
14 Decl. Ex. 3 at 62 ¶ 111.)

## VI. CONCLUSION

    For these reasons, this Court has and should retain jurisdiction.

Dated: March 21, 2014

Respectfully Submitted,

**BRYAN CAVE LLP**

By: /s/ Nafiz Cekirge
    Nafiz Cekirge
Attorneys for Defendants
COUNTRYWIDE FINANCIAL
CORPORATION (erroneously sued as
"Countrywide Financial Corporation,
(n.k.a. Bank of America Home Loans)");
COUNTRYWIDE HOME LOANS, INC.;
BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.