O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MARINO, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>         vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.<br><br>              Defendants. | CASE NO. SACV 14-46-JLS (ANx)<br><br>**ORDER GRANTING MOTION TO DISMISS (Doc. 11)** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

I.     **INTRODUCTION**

Before the Court is a Motion to Dismiss filed by Defendants Countrywide Financial Corp., Countrywide Home Loans, Inc., Bank of America Corp., and Bank of America, N.A.  (Mot., Doc. 11.)  Plaintiff Anthony Marino filed an Opposition, and Defendants replied.  (Opp'n, Doc. 13; Reply, Doc. 14.)  Having considered the parties' briefing, and having taken the matter under submission, the Court GRANTS Defendants' Motion.

II.    **BACKGROUND**

In 2004, Anthony Marino purchased a single family residence for $585,000. (Notice of Removal Ex. A ("FAC.") at 8, Doc. 1.)[1]  Marino financed part of the purchase price with a $468,000 loan from Washington Mutual.  (*Id.*)  In April 2006, Marino entered into two loans with Countrywide: (1) "a first mortgage loan" for $479,000 that replaced the Washington Mutual loan and was "secured by a first deed of trust" on the property; and (2) "a new second mortgage cash-out refinance loan" for $169,000, "secured by a second deed of trust" on the property.  (*Id*. at 9.)  Marino paid various fees to Countrywide to close the loans.  (*Id*.)

According to Marino, "in lieu of conducting his own independent investigation," he "relied upon Countrywide's loan processing assessments; i.e., Countrywide's appraisal of [his] property and Countrywide's determination that the residual equity in [his] property was sufficient in amount to secure full repayment of his aggregate loan balance in the event of a future default and foreclosure."  (*Id.*)  Marino also alleges he "assumed the inherent risk that home prices could decline over time below his aggregate principal loan balance, subjecting him to a possible deficiency judgment in the event of default," although he alleges he did not assume such a risk "caused by Countrywide's undisclosed

---

[1] When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010).

1  unsound business, lending and loan origination practices."  (*Id*. at 11.)  Marino claims "he

2  would not have entered into the loan transactions he subsequently entered into with

3  Countrywide" had he known of these practices and their foreseeable effects (described

4  below).  (*Id*.)

5          Marino alleges that these unsound lending practices began in 2003 when

6  Countrywide implemented an aggressive growth strategy.  (*Id.* at 19.)  As a part of this

7  strategy, Countrywide "sacrifice[d] sound lending practices" and began originating a large

8  number of subprime and adjustable rate loans.  (*Id.* at 22.)  This practice resulted in "a

9  mountain of bad loans" to borrowers, a high percentage of which were in California, who

10  could not afford to make payments under the terms of their agreements.  (*Id*.)

11  Countrywide executives were aware but actively concealed the fact that when the housing

12  boom ended, "large scale defaults and foreclosures would significantly change the supply-

13  demand conditions of those regional marketplaces in which the foreclosures occurred,

14  substantially contributing to the decline of home prices."  (*Id.* at 27-28.)  As a result,

15  California borrowers with a second mortgage, including those borrowers who obtained

16  loans from Countrywide, would face a "substantially increased risk" that, in the event they

17  were unable to make mortgage payments and a judicial foreclosure was successfully

18  completed on their property, they might be liable for a deficiency judgment on the second

19  mortgage.  (*Id*. at 68, 72, 83.)

20          Marino has "not made a monthly payment on his second mortgage debt since

21  October of 2008," and "[o]ver the past five years [he] has received numerous letters and

22  telephone calls from [Defendants] threatening action against [him] unless he cures his

23  default."  (*Id*. at 10.)  In April 2013, Marino received a letter from Bank of America

24  advising him that it intended to initiate a foreclosure action on the property.  (*Id.*)  The

25  current market value of Marino's property is less than the aggregate balance owed by

26  Marino on his two mortgages, and "[s]hould he default on his first mortgage debt, Plaintiff

27  would be subject to a deficiency judgment by the second mortgage lienholder."  (*Id.* at 11.)

28

1   Marino remains current on his first mortgage.  (*Id*.)  On April 29, 2013, Marino contacted

2   his attorney, who then "conducted an investigation into Countrywide's business, lending,

3   and loan origination practices" and presented his findings to Marino in the form of a

4   complaint.  (*Id.* at 10-11.)  Upon reading the complaint, Marino discovered

5   "Countrywide's fraudulent conduct."  (*Id.* at 11.)  Specifically, Marino learned of

6   Countrywide's "undisclosed unsound business, lending and loan origination practices."

7   (*Id.*)

8          On December 5, 2013, Marino filed a First Amended Complaint in Orange County

9   Superior Court, asserting claims against Defendants for (1) declaratory/injunctive relief;

10  and (2) violation of California's Unfair Competition Law.  (*Id*. at 82-86.)  Marino's

11  declaratory/injunctive relief claim seeks to hold Defendants liable for any deficiency

12  judgment on his second mortgage, and either to enjoin Defendants from seeking such a

13  deficiency judgment or, if Defendants assign their interest in the loans to a third party, to

14  require Defendants to defend and indemnify Marino for any deficiency judgment sought

15  by a third party.  (*Id*. at 30-31, 84.  *See also id*. at 87.)  Marino's UCL claim seeks similar

16  relief, and also requests restitution, apparently for any money he paid to Defendants when

17  he agreed to take out his loans.  (*Id*. at 30-31, 85-86.  *See also id*. at 87.)  Marino brings

18  these claims on behalf of himself and a class of certain Countrywide borrowers.  (*Id.* at

19  14.)  Defendants removed the action on January 13, 2014.  (Notice of Removal at 1.)[2]

20         On February 3, 2014, Defendants filed the present Motion.  (Mot.)

21

22  **III.    LEGAL STANDARD**

23         When a motion is made pursuant to Rule 12(b)(1), the plaintiff has the burden of

24  proving that the court has subject matter jurisdiction.  *Tosco Corp. v. Cmtys. for a Better

25  Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds* by *Hertz Corp. v.*

26  _____

27  [2] The original Complaint was not served on Defendants; the First Amended Complaint was served
on December 13, 2013.  (Notice of Removal ¶ 2.  *See also* Doc. 18 at 1-2.)

28

1   *Friend*, 130 S.Ct. 1181 (2010).  For the court to exercise subject matter jurisdiction, a

2   plaintiff must show that he or she has standing under Article III.  *Cetacean Cmty. v. Bush*,

3   386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III

4   standing is not a 'case or controversy,' and an Article III federal court there-fore [sic] lacks

5   subject matter jurisdiction over the suit." (citation omitted)).  Article III sets forth the

6   constitutional limitations on standing, requiring a plaintiff to establish (1) injury in fact, (2)

7   causation, and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

8   The injury in fact must be concrete and particularized and actual or imminent, not

9   conjectural or hypothetical.  *Id.*  "A jurisdictional challenge under Rule 12(b)(1) may be

10  made either on the face of the pleadings or by presenting extrinsic evidence."  *Warren v.*

11  *Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  "In a facial attack, the

12  challenger asserts that the allegations contained in a complaint are insufficient on their face

13  to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

14  Cir. 2004).  "Dismissal for lack of subject matter jurisdiction is appropriate if the

15  complaint, considered in its entirety, on its face fails to allege facts sufficient to establish

16  subject matter jurisdiction."  *In re Dynamic Random Access Memory (DRAM) Antitrust*

17  *Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008).  "The requirement that a case or controversy

18  exist under the Declaratory Judgment Act is identical to Article III's constitutional case or

19  controversy requirement."  *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669-670

20  (9th Cir. 2005) (quotation marks omitted).

21      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

22  sufficiency of the claims asserted in the complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662,

23  678-79 (2009).  When evaluating a motion to dismiss under Federal Rule of Civil

24  Procedure 12(b)(6), the Court must accept as true all allegations of material facts that are

25  in the complaint and must construe all inferences in the light most favorable to the non-

26  moving party.  *Moyo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir. 1994).  Dismissal of a

27  complaint for failure to state a claim is not proper where a plaintiff has alleged "enough

28

1  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550

2  U.S. 544, 570 (2007).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires

3  only "a short and plain statement of the claim showing that the pleader is entitled to relief."

4  Fed. R. Civ. P. 8(a)(2).  "However, where a complaint includes allegations of

5  fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account

6  of the 'time, place, and specific content of the false representations as well as the identities

7  of the parties to the misrepresentations.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th

8  Cir. 2007) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004)).

9  "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud

10  so that a defendant can prepare an adequate answer from the allegations." *Moore v.*

11  *Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).

12

13  **IV.    DISCUSSION**

14        Defendants argue that (1) Marino's requests for declaratory and injunctive relief are

15  not ripe; (2) Marino's claims are time-barred; (3) Marino fails to allege the essential

16  elements of his claims; (4) Marino's allegations lack specificity; and (5) Bank of America

17  Defendants are not liable for Countrywide Defendants' conduct.  (Mem. at 2, Doc. 11-1;

18  Reply at 1.)  The Court finds Marino lacks Article III standing to seek declaratory or

19  injunctive relief, and thus his declaratory relief claim and a portion of his UCL claim must

20  be dismissed.  The Court further finds that the remainder of Marino's claim for violation of

21  the UCL is time-barred and, even if it were not, it fails to state a claim.  As Marino's

22  claims are either not ripe, time-barred, or fail to state a claim, the Court does not address

23  whether Bank of America Defendants are liable for Countrywide's conduct. .

24

25        **A.    Article III Standing/Ripeness**

26        Defendants argue that Marino lacks Article III standing to seek declaratory or

27  injunctive relief, because the issues underlying the requested relief are not ripe for review.

28

1   (Mem. at 6-7.)  "Standing and ripeness under Article III are closely related.  For a suit to

2   be ripe within the meaning of Article III, it must present concrete legal issues, presented in

3   actual cases, not abstractions. But whereas standing is primarily concerned with who is a

4   proper party to litigate a particular matter, ripeness addressees when that litigation may

5   occur."  *Colwell v. Dept. of Health and Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009)

6   (quotation marks omitted).  "[A] claim is not ripe for adjudication if it rests upon

7   'contingent future events that may not occur as anticipated, or indeed may not occur at

8   all.'"  *Texas v. United* States, 523 U.S. 296, 300 (1998).  "At the same time, a litigant need

9   not await the consummation of threatened injury to obtain preventive relief. If the injury

10  is *certainly* impending, that is enough."  *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d

11  1174, 1180 (9th Cir. 2010) (quotation marks omitted).  Article III standing must exist in

12  federal court whether or not a state law claim would be ripe for a state court to review.  *See*

13  *Lee v. Am. Nat. Ins., Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001).[3]

14      Under California law, a lender must obtain a judicial foreclose before seeking a

15  deficiency judgment.  Cal. Civ. Proc. Code. §§ 580a, 580d, 726; *Calderock Joint Venture,*

16  *L.P. v. Lobel*, 206 Cal. App. 4th 1531, 1539-40 (Ct. App. 2012).  Here, Marino asks the

17  Court to hold Defendants liable for any deficiency judgment on his second mortgage, and

18  enjoin them from seeking any such deficiency judgment.  However, there is no deficiency

19  judgment as to the second mortgage.  Nor has any judicial foreclosure on either mortgage

20  even been initiated, much less completed, despite the fact that since 2008 Marino has

21  received "numerous" letters and phone calls from Defendants "threatening action."[4]

22  Adding to the contingent nature of the claim, the foreclosure proceeding would have to be

23  _____

24  [3] Generally, a claim must also be "ripe" based on prudential considerations.  *Colwell*, 558 F.3d at
    1123.  Defendants do not address prudential ripeness.  As the Court finds Marino's requests for

25  declaratory and injunctive relief are not constitutionally ripe, it does not reach prudential ripeness.

26  [4] A junior creditor may seek a deficiency judgment after the senior lender judicially forecloses on
    the real property, with certain exceptions where the creditor owns both liens.  *Calderock*, 206 Cal.

27  App. 4th at 1543-47.  Marino, however, is current on his first mortgage.

28

1 inadequate to cover the amount of the debt for there to be a deficiency.  Marino's alleged

2 injury therefore is far from "*certainly* pending."  *Addington*, 606 F.3d at 1180.  Instead, as

3 Marino himself admits, his claims "rest upon contingent future events that may not occur

4 as anticipated, or indeed at all."  (Opp'n at 19 (quotation marks omitted)).  *See Texas*, 523

5 U.S. at 300.  As such, his cause of action for "declaratory/injunctive" relief is not ripe, nor

6 is his UCL claim, to the extent it is based on the same request for injunctive relief.

7        Accordingly, Marino's cause of action for "declaratory/injunctive relief" is

8 DISMISSED.  The cause of action for violation of the UCL is DISMISSED to the extent it

9 seeks the same injunctive relief.

10

11        **B.**     **Statute of Limitations/Discovery Rule as to UCL Cause of Action**

12        Defendants also argue that the claims are time barred.  As Marino's requests for

13 declaratory relief and injunctive relief are not ripe, the Court addresses only the cause of

14 action for violation of the UCL, which has a four year statute of limitations, and only to the

15 extent it seeks restitution for the loan fees Marino paid.  Cal. Bus. & Prof. Code § 17208.

16 *See also Addington*, 606 F.3d at 1182 n.6 (discussing interplay between statute of

17 limitations and ripeness inquiry).

18        Marino alleges he paid the loan fees for which he seeks restitution in 2006, but he

19 did not commence this action until 2013, seven years later.  Marino seeks to apply the

20 discovery rule to make his claim timely.  (Opp'n at 21.)  Under the discovery rule, "[t]he

21 cause of action in [a] case is not deemed to have accrued until the discovery, by the

22 aggrieved party, of the facts constituting the fraud or mistake."  Cal. Civ. Proc. Code

23 § 338(d).  For the rule to apply, a plaintiff must "specifically plead facts to show (1) the

24 time and manner of discovery [of facts constituting the fraud] and (2) the inability to have

25 made earlier discovery despite reasonable diligence."  *Canas v. Citimortgage*, *Inc*., No. SA

26 CV 13-00322-DOC, 2013 WL 3353877, at *3 (C.D. Cal. Jul. 2, 2013) (citations omitted).

27 "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry

28

1   notice of the cause of action." *Fox v. Ethicon Endo Surgery, Inc.*, 35 Cal. 4th 797, 807

2   (2005).  The statute of limitations begins to run "only after one has knowledge of facts

3   sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on

4   inquiry." *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 298 (Ct. App.

5   2004).  "When damages are an element of a cause of action, the cause of action does not

6   accrue until the damages have been sustained." *City of Vista v. Robert Thomas Securities,*

7   *Inc.*, 84 Cal. App. 4th 882, 886 (Ct. App. 2000).

8         Marino alleges that in preparing his case, he "has drawn heavily" from various other

9   lawsuits against Countrywide dating back to 2008.  (FAC at 23-25.)  He also cites

10  Congressional testimony from 2007 and news reports from 2007 and 2008 regarding

11  Countrywide's lending practices.  (*Id*. at 40-41, 61, 76.)  Marino alleges that "the

12  foreseeable effects of Countrywide's unsound lending practices began to materialize" in

13  2007, around the time Countrywide "revealed an alarming growth in delinquencies and

14  defaults." (*Id*. at 75.)  In October 2008, Marino defaulted on his second mortgage, putting

15  him at risk of foreclosure and, possibly, a deficiency judgment.  (*Id*. at 10.)  As stated

16  above, Marino alleges he has received "numerous" letters and phone calls from Defendants

17  since 2008 "threatening action" against him unless he cures his default.  (*Id*. at 11.)

18  Despite this, Marino did not begin investigating these matters until April 2013, when he

19  was sent a letter threatening foreclosure.  (*Id*. at 10.)  Marino's allegations fail to

20  demonstrate why a reasonably prudent person in his situation would not have been on

21  inquiry notice at least as of 2008, based both on the fact that (1) Marino was unable to

22  afford his mortgage payments at that time and began receiving "numerous" letters and

23  phone calls "threatening action;" and (2) much of the information on which he bases his

24  allegations was publicly available.

25        Thus, the balance of Marino's UCL cause of action, which seeks restitution, is time-

26  barred.  Further, the above-cited allegations demonstrate that it would be impossible for

27  Marino to allege facts demonstrating that the discovery rule would allow him to avoid the

28

1  statute of limitations.  Accordingly, the balance of Marino's UCL cause of action is

2  DISMISSED WITH PREJUDICE.

3

4          **C.**     **Merits of UCL Cause of Action**

5        Alternatively, the Court concludes that, to the extent Marino's UCL cause of action

6  is ripe, and assuming it were not time-barred, Marino nonetheless fails to state a claim

7  because he cannot plausibly allege a duty to disclose, materiality, or reliance. [5]

8        Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice

9  and unfair, deceptive, untrue or misleading advertising . . . ."  Cal. Bus. & Prof. Code

10  § 17200.  "Conduct is considered 'fraudulent' under the UCL if the conduct is 'likely to

11  deceive' . . . .  Although a UCL claim need not plead the elements of common law

12  fraudulent deception, it must allege the existence of a duty to disclose, as well as reliance."

13  *Pinel  v. Aurora Loan Servs., LLC.*, 814 F. Supp. 2d. 930, 941 (N.D. Cal. 2011) (citations

14  omitted).  A duty to disclose exists if (1) the parties have a fiduciary relationship; (2)

15  defendant has exclusive knowledge of material facts not known to plaintiff; (3) defendant

16  actively conceals a material fact; or (4) defendant makes partial representations to plaintiff

17  and suppresses material facts.  *See Bank of Am. Corp. v. Super. Ct.*, 198 Cal. App. 4th 862,

18  870-71 (Ct. App. 2011).  In addition, "a plaintiff must have suffered an injury in fact and

19  lost money or property as a result of the unfair competition to have standing to pursue

20  either an individual or a representative claim under the California unfair competition law . .

21  . ."  *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 849 (Ct. App. 2008) (quotation marks

22  omitted).  *See also* Cal. Bus. & Prof. Code § 17204.  To the extent Marino's UCL claim is

23

24

25  [5] Defendants also argue Marino fails to state a claim under the unfair and unlawful prong of the UCL.  (Mem. at 19-20.)  Marino's Opposition does not address Defendants' argument.  The Court

26  deems this an admission that Marino fails to state a claim under the unfair and unlawful prongs. *Cf. Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal.

27  Oct. 6, 2011).

28

1    premised on fraudulent concealment, there must also be a nexus between the alleged

2    fraudulent concealment and the economic harm suffered.  *See Bank of Am.*, 198 Cal. App.

3    4th at 873.

4           Marino fails to allege Defendants owed him a duty to disclose the information they

5    allegedly withheld.  A lender does not owe a duty to a borrower when it decides whether a

6    borrower can afford a loan.  *See Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 436

7    (Ct. App. 2011); *Bonyadi v. CitiMortgage Bank*, No. CV 12-5239-CAS (FFMx), 2013 WL

8    877603, at *5 (C.D. Cal. Mar. 8, 2013).  This is because "[a] commercial lender is entitled

9    to pursue its own economic interests in a loan transaction."  *Nymark v. Heart Fed. Savings*

10   *& Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (Ct. App. 2010)  "The lender's efforts to

11   determine the creditworthiness and ability to repay by a borrower are for the lender's

12   protection, not the borrower's."  *Perlas*, 187 Cal. App. 4th at 436. (citations and quotation

13   marks omitted).   Thus, there was no duty for Defendants to disclose to Marino the

14   affordability of his loan.  By extension, there was no duty to inform Marino whether other

15   borrowers could afford their loans.  *Cf. Bank of Am.*, 198 Cal. App. 4th at 870-73

16   ("[W]hile Countrywide had a duty to refrain from committing fraud, it had no independent

17   duty to disclose to its borrowers its alleged intent to defraud its investors by selling them

18   mortgage pools at inflated values.").  Because Defendants had no duty to disclose to

19   Marino whether he or other borrowers could afford their loans, there was no duty to

20   disclose that so many borrowers might not be able to afford their loans that it would affect

21   housing prices, such that if Marino defaulted (as a result of being unable to afford his

22   loan), he might face an increased risk of a deficiency judgment.  *Cf. id.* (holding

23   Countrywide did not owe a "duty to disclose to the plaintiffs/borrowers its alleged

24   fraudulent scheme to create inflated property appraisals throughout California, and then

25   pool its mortgages and sell the pools to unsuspecting investors at inflated prices.").  *See*

26   *also Perlas*, 187 Cal. App. 4th at 436; *Nymark*, 231 Cal. App. 3d at 1099 ("[A] strong

27   public policy exists, if our financial institutions are to remain solvent, to prevent a

28

11

1 conventional money lender from having to insure [the success of every investment].")

2 (alteration in original, quotation marks omitted).

3      As to causation, Marino's alleged damages are that he paid fees to obtain loans

4 from Defendants that he otherwise would not have entered into, had he known the facts

5 that allegedly were fraudulently concealed. However, Marino does not allege he would

6 not have entered into a loan transaction with another financial institution (or entered into a

7 loan transaction that required no fees), which would be necessary to demonstrate causation

8 in this case, as Marino alleges Countrywide's practices affected home prices throughout

9 California, not just the home prices of Countrywide borrowers in California. (FAC at 68-

10 70, 75.) *See Bank of Am.*, 198 Cal. App. 4th at 873 ("Irrespective of whether a homeowner

11 obtained a loan from Countrywide, or obtained a loan through another lender, or whether a

12 homeowner owned his or her home free and clear, all suffered a loss of home equity due to

13 the generalized decline in home values. That being the case, there is no nexus between the

14 alleged fraudulent concealment by Countrywide and the economic harm which these

15 plaintiffs/borrowers have suffered."). As Marino does not do so, he does not allege

16 causation.

17      Thus, to the extent Marino's UCL cause of action is ripe, and assuming the cause of

18 action was not time-barred, it would nonetheless fail for the reasons stated above. The

19 Court finds that Marino could not amend his pleadings to address the lack of a duty to

20 disclose, and therefore Marino's UCL cause of action, to the extent it is ripe, is dismissed

21 with prejudice.[6]

22

23 **V.    CONCLUSION**

24      For the foregoing reasons, Defendants' Motion is GRANTED. Marino's cause of

25 action for "declaratory/injunctive relief," and his cause of action for violation of the UCL,

26

27 [6] To the extent Marino's unripe requests for declaratory and injunctive relief are premised on the same duty to disclose, they would fail for the same reasons.

28

12

1    to the extent it seeks injunctive relief, are DISMISSED.  To the extent Marino's UCL

2    claim seeks restitution, it is DISMISSED WITH PREJUDICE.

3

4

5    **SO ORDERED.**

6

7    DATED: July 7, 2014                        JOSEPHINE L. STATON

                                                HONORABLE JOSEPHINE L. STATON
8                                               UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28